**Helen T. WHITE, Plaintiff-Appellee,**

v.

**The CONTINENTAL CASUALTY COM-PANY, a corporation, Defendant-Appellant.**

**No. 1-69.**

United States Court of Appeals
Tenth Circuit.

Aug. 11, 1969.

Donald E. Abram, Pueblo, Colo. (Phelps, Fonda, Hays & Abram, Pueblo, Colo., on the briefs), for appellant.

Lester L. Ward, Jr., Pueblo, Colo. (Predovich & Ward, Pueblo, Colo., on the brief), for appellee.

Before PHILLIPS, LEWIS and HICKEY, Circuit Judges.

ORIE L. PHILLIPS, Circuit Judge.

Helen T. White filed this action against Continental in the District Court in and for the County of Pueblo and State of Colorado on April 11, 1967. She alleged that she was the beneficiary of an insurance policy in full force and effect; that her husband, William M. White, was an insured thereunder; that he was killed in an automobile accident and that such accident was an insured hazard under the policy; that she filed written proof of loss; that the amount owing to her under the policy was $50,-000; and that Continental had not paid any of such sum. On May 8, 1967, on petition of Continental, the case was duly removed to the United States District Court for the District of Colorado. Continental filed its answer on June 20, 1967, wherein it admitted everything in the complaint, except that it denied liability on the ground that the deceased was not, at the time of his death, on the business of the "holder" of the policy, as such term is defined in the policy, and therefore his death was not within the coverage of the policy.

On August 16, 1966, Continental had in effect policy No. AA 83683, which policy insured the president and all the officers, directors and employees of the holder. The holder of the policy was the Minnequa Bank of Pueblo, Colorado, the First National Bank of Durango, Colorado, the First National Bank of Salida, Colorado, the First National Bank in Alamosa, Colorado, and the Bank of Aspen, Colorado. The policy provided for payment of the principal sum of $50,000 in the case of death arising out of an insured hazard. The policy contained the following description of hazards:

"The Hazards Against Which Insurance Is Provided Under This Policy Are, Provided Such Hazards Arise

While The Insured Person Is On The Business Of The Holder, Injury Sustained In Consequence Of And During The Course Of Any Trip Made By The Insured Person, Provided Such Trip Requires The Insured Person To Travel Outside The Corporate Limits Of The Town Or City In Which He Is Regularly Employed Or Has His Residence (Excluding Everyday Travel To And From Work And Bona Fide Vacations).

"Such Trip Shall Be Deemed To Have Commenced When The Insured Person Leaves His Residence Or Place Of Regular Employment For The Purpose Of Going On Such Trip, Whichever Last Occurs, And Shall Continue Until Such Time As He Returns To His Residence Or Place Of Regular Employment, Whichever First Occurs."

On August 16, 1966, White, by virtue of his being president and a director of each of the holders of the Continental policy, was an insured. White, together with other members of his family, held a majority of the shares of each of the five banks designated as holders of the policy. At the same time, White was an advisory director for Mountain States Telephone Company and also served on the boards of the following corporations: First National Bank of Denver, Colorado Fuel & Iron Corporation, Golden Cycle Corporation, Great Western Sugar Company, Jefferson County Bank, Colorado Milling and Elevator Company, Smith World Wide Movers, and Imperious Mining Company.

White was appointed to the advisory board of Mountain States in February 1963. The minutes of the meetings of the holder banks do not reflect any authorization for White to have accepted such position, nor did any of the holder banks compensate White for so serving or reimburse him for expenses incurred in so serving. Mountain States paid White $75 for each meeting of the advisory board which he attended, and also reimbursed him for his travel expenses to Denver. All such compensation from Mountain States was reported by White on his personal income tax returns.

The Mountain States advisory board met on the morning of August 16, 1966, and White attended. He flew to Denver on a chartered Air Courier Service plane, which he had chartered and paid for in his own name. Following the meeting, and sometime after noon, White returned to Pueblo. While driving away from the Pueblo Municipal Airport in an automobile registered in the name of the Minnequa Bank, White was struck and killed by another automobile. Herein lies the only question presented to the court for its determination on appeal. At the time of his death, was White on the business of the holder banks?

The bulk of the testimony at the trial dealt with the manner in which the Minnequa Bank and the local insurance agent treated White's travels and the value of White's outside directorships to the Minnequa Bank and the other holder banks.

Charline Burkhardt, secretary to the president of the Minnequa Bank, testified that each month, each of the holder banks would send a report of all the officers', directors', and employees' travels, if there had been any travels made on bank business. She, in turn, would keep track of White's travels on her office calendar, and report the number of trips he had made on bank business. She would only indicate the number of trips made by White, and would not indicate the purpose or destination of the trips. She testified that only business trips were included in the total, and that she more or less determined which of the trips to include.

The monthly reports made by Burkhardt were required by the Sam Jones Agency, Inc., the insurance agency which serviced the policy locally. James M. Martin, the agency's vice president, testified that such information was required by Continental at the time the policy was renewed each year, so that Continental would know how much of a premium to charge. Martin further tes-

tified that while he did not know if non-business trips were being reported for White, he had no reason to believe that they were. Samuel T. Jones, president of the agency, testified that he never made any representations one way or the other on the question of whether trips to outside board meetings were covered by the policy. He did state that he was a member of the board of the Minnequa Bank, and that such board never authorized the trips in question.

Jones was also called upon to testify with respect to the value of White's outside directorships to the Minnequa Bank. He stated that Colorado Fuel & Iron made additional deposits as a result of White's membership on its board, and that White gained valuable knowledge on general economic conditions in the area, which information aided the Minnequa Bank in determining its policies. Robert R. Davis, senior vice president of the Minnequa Bank and one of the bank's directors, testified that White's knowledge gained from outside directorships was very helpful to such bank. He referred generally to such bank being better able to decide whether or not to purchase particular municipal bonds and being better able to know when to impose a swing interest rate on loans in anticipation of an increase in interest rates. With specific reference to the position White held on the Mountain States advisory board, Davis testified that knowledge of the fact that telephones were being connected or disconnected in a particular area served as one reliable indicator of economic conditions in such area, and that such information was transmitted by White to the Minnequa Bank and afforded valuable information to such bank. Robert J. Pringle, Mountain States' vice president and general manager for Colorado, testified that he had heard members of the advisory board express the thought that service on the board was of benefit to them in their own businesses.

Continental introduced the deposition of D. S. Childs, the assistant secretary and assistant treasurer of Mountain States. He explained that Mountain States made deposits in four Pueblo banks, depositing in each bank the checks drawn thereon, and that it, on alternate days, would deposit the other checks in either the First National Bank of Pueblo or the Minnequa Bank. He did not explain why those two banks were selected. Childs did state in his deposition that Mountain States had no special arrangement with White outside of the depositing policy just explained. Pringle testified during the trial that no agreements between White or any of the holder banks and Mountain States were consummated at meetings of the advisory board.

Mountain States also had a travelers' insurance policy. Its policy was with the Travelers Insurance Company, and it provided that benefits would be paid for losses occurring while a person covered by the policy was on the business of the policyholder. Helen T. White has received $100,000 under the terms of said policy.

The case was tried to the court on September 25, 1968. The court found the facts to be substantially as we have stated them, and concluded that the plaintiff (Helen T. White) should have judgment in the amount of $50,000, plus interest as stipulated by the parties, and costs. He concluded that all of Mr. White's trips were, to one degree or another, accepted as having been related to his position as president of the Minnequa Bank; that no formal authorization for such trips was expected or required, and that the trips furthered such bank's business and were of benefit to it; that White was a man of sufficient means not to be induced to sit on the advisory board for the nominal compensation he received; and finally that Mrs. White's recovery under a travelers' policy held by Mountain States was irrelevant, since White could obviously have been serving the interests of both the Minnequa Bank and Mountain States by serving on Mountain States' advisory board.

From the judgment in favor of Mrs. White, Continental has appealed.

This is essentially a fact case.

After a careful consideration of the entire record on the appeal, we are of the opinion that the evidence and the inferences clearly deductible therefrom amply afford substantial support for the court's findings, and that such findings are not clearly erroneous. They are, therefore, binding on this court.[1]

The findings clearly support the conclusions of law reached by the trial court. Accordingly, the judgment is affirmed.

---

1. Fed.Rules Civ.Proc. rule 52, 28 U.S. C.A.; United States Fidelity & Guaranty Co. v. State of Oklahoma ex rel. Se- bring, 10 Cir., 383 F.2d 417, 421; Rudd Paint & Varnish Co. v. White, 10 Cir., 403 F.2d 289, 290.