**Gladys J. OLLIER, Executrix of the Estate of Louis N. Ollier, Deceased, Plaintiff-Appellee,**

v.

**CONTINENTAL CASUALTY COMPANY, Defendant-Appellant.**

**No. 20343.**

United States Court of Appeals, Sixth Circuit.

April 28, 1971.

---

John R. Eastman, Toledo, Ohio, Eastman, Stichter, Smith & Bergman, Toledo, Ohio, on the brief for appellant.

John W. Hackett, Jr., Toledo, Ohio, Shumaker, Loop & Kendrick, Rolf H. Scheidel, Toledo, Ohio, on the brief for appellee.

Before TOM C. CLARK, Associate Justice,* PHILLIPS, Chief Judge, and PECK, Circuit Judge.

PER CURIAM.

This action was brought upon an aviation accident insurance policy by the widow and administratrix of a decedent killed in the crash of a commercial airliner en route from Cincinnati, Ohio, to Toledo, Ohio, on March 5, 1967. At the conclusion of all the evidence, the District Court granted the plaintiff's motion for a directed verdict and entered judgment in favor of the plaintiff in the amount of $100,000, the claimed benefit under the policy. Jurisdiction was based on diversity of citizenship; Ohio law controls. Erie R. R. v. Tompkins, 304 U. S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

The group accident insurance policy in question was issued by the appellant insurance company to the decedent's employer, the Prestolite Company, a subsidiary of the Eltra Corporation. It provided coverage in case of injury or death of certain employees sustained while riding on a commercial airliner, so long as the employee was "on the business of the [employer]" at such time. The policy further provided:

> "The term 'On the Business of the [Employer]', as used in this policy, means on assignment by or with the authorization of the [employer] for the purpose of furthering the business of the [employer]."

There is no dispute that the decedent was an insured person under the policy or that he was killed while riding as a passenger on a commercial airliner. The only issue is whether he was on the business of his employer at the time of his death within the meaning of the policy.

Decedent's principal duties as an executive of the Prestolite Company involved marketing and sales promotion of the company's various lines of automotive equipment. Although he was based in the company's offices in Toledo, the course of his employment required extensive travel, and he was generally authorized to schedule his business trips and select his method of travel without the prior approval of his superiors. Consistent with that authority, in the latter part of February, 1967, he planned two consecutive trips for the first week of the following month. On March 1, 1967, decedent and his assistant were to fly from

* Associate Justice of the Supreme Court of the United States (retired), sitting by designation.

Toledo, via Cincinnati, to Louisville, Kentucky, for a one day meeting with representatives of the Standard Oil Company of Kentucky. The following day they were to fly from Louisville to Chicago for a two day trade show, and then return to Toledo. However, on February 28th, decedent was notified by relatives that his father was seriously ill in Cincinnati. He thereupon collected his business papers for the Louisville and Chicago meetings, picked up sufficient clothes for the remainder of the week, and, upon finding no satisfactory air travel arrangements, drove with his wife to Cincinnati. After reaching Cincinnati and learning of the seriousness of his father's illness, he telephoned his office the next day and cancelled the remainder of his part of the planned trip, instructing his assistant to carry on without him. For the next few days decedent remained at his father's bedside, but on March 5th, despite the pleas of his relatives to stay in Cincinnati, decedent boarded the fatal flight from Cincinnati to Toledo in order to attend a business meeting at his home office the next day. Thus the narrow question before us is whether decedent's return trip to Toledo was "on the business of" his employer.

The District Court found that the decedent began the trip from Toledo to Cincinnati as the first leg of a business trip, although one day earlier than originally planned. From this premise the Court reasoned that the completion of the trip, i. e., the fatal return flight from Cincinnati to Toledo was necessarily "on the business of the [employer]" within the meaning of the policy even though the remainder of the planned trip was cancelled for personal reasons after the decedent reached Cincinnati.

The appellant insurance company does not dispute the validity of the District Court's reasoning. Rather, it vigorously disputes the validity of the District Court's major premise, that the trip from Toledo to Cincinnati was the first leg of a business trip. It contends instead that the sole purpose of the decedent's original venture was his natural desire to be with his father at the time of the latter's grave illness and apparent imminent death.

We disagree. Although appellant contends that it was merely coincidental that Cincinnati happened to be on the planned route to the Louisville business conference and that the decedent would have gone anywhere to be with his father under the circumstances, those arguments have no support in the record. To the contrary, the record suggests that had Cincinnati not been on the route of the planned business trip the decedent might have not deviated from the original plans at all. We need not indulge in such speculation, however, in light of the detailed findings of the District Court from the virtually undisputed evidence adduced at trial. The District Court found:

"The trip to Cincinnati, Ohio can be considered the first leg of his business trips to Louisville, Kentucky, and to Chicago, Illinois upon the following facts:

"The decedent began his trip to Cincinnati, Ohio with the intention of going thereafter to Louisville and on to Chicago. This is supported by the facts that he took enough clothing not only for the trip to Cincinnati but also for the remaining trip to Louisville and Chicago and that the decedent did not cancel his airplane reservations until he learned that his father might expire at any moment. This cancellation did not take place at the time he began the trip to Cincinnati but while he was there. This is fortified by the fact that Albert Rash, the decedent's assistant, went to Louisville carrying in his possesssion the decedent's airplane tickets for the trip to Chicago and the return trip to Toledo. Thus, when the decedent commenced his trip to Cincinnati he had the intention to fulfill his business commitments."

These findings cannot be said to be clearly erroneous nor is the District Court's conclusion that the return trip from the first leg of a business trip which was later cancelled for personal reasons was within the limits of the pol-

icy coverage unreasonable. Any reasonable interpretation of the policy resulting in coverage of the insured must be adopted by the trial court in Ohio. *See e. g.*, Butche v. Ohio Casualty Insurance Company, 174 Ohio St. 144, 187 N.E.2d 20 (1962); Home Indemnity Company v. Village of Plymouth, 146 Ohio St. 96, 64 N.E.2d 248 (1945); Great American Mutual Indemnity Company v. Jones, 111 Ohio St. 84, 144 N.E. 596 (1924).

The judgment of the District Court is affirmed.