PICKETT, Judge.
Mrs. W. K. Lea, individually and as the widow of W. K. Lea, and as the tutrix of her minor children, Robyn Lea and Reid Lea, brought this suit against the St. Paul Fire and Marine Insurance Company, as the insurer of her husband, W. K. Lea, under a policy of insurance issued by it to the Louisiana Hospital Association, for accidental death benefits for the sum of $100,000.00, together with penalties and attorney’s fees, which she claims under the provisions of said insurance policy. The defendant answered and admitted that it issued the policy of insurance, but denied that the policy provided coverage for the death of Mr. W. K. Lea because of the circumstances under which his death occurred. After trial on the merits, judgment was rendered in favor of the defendant, St. Paul Fire and Marine Insurance Company, and against the plaintiff, Mrs. W. K. Lea, individually and as the widow of W. K. Lea, and as tu-trix of the minor children, Robyn Lea and Reid Lea, dismissing the plaintiff’s suit at her cost. The plaintiff has appealed devol-utively.
The record shows that prior to August 2, 1972, the St. Paul Fire and Marine Insurance Company (St. Paul) had issued Policy Number BTA 866 JM 5732 to the Louisiana Hospital Association (Policyholder), which was in full force and effect on August 2, 1972. The policy provided for the payment of $100,000.00 in the event of death arising out of an insured hazard. The policy contained the following description of hazards:
“The hazards against which insurance is provided under this policy are such injuries occurring to the insured Person, anywhere in the world, during travel and sojourn while ‘on the business of the Policyholder,’ provided such travel is to a point or points located outside the city or town in which the Insured Person is regularly employed, subject to the following qualifications,
(1)Coverage begins at the actual start of such business trip whether it is from the Insured Person’s place of regular employment, home or other location; coverage terminates upon the Insured Person’s return to his place of regular employment or home, whichever shall first occur.
(2)With respect to flying in eir-craft, coverage shall not apply except:
(A) While riding as a passenger, and not as a pilot, operator or member of the crew, in or on (including boarding or alighting from):
(1) any civilian scheduled air carrier holding certificate, license or similar authorization for civilian scheduled air carrier transportation by the country of the aircraft’s registry, and which in accordance therewith files, prints, maintains and publishes schedules and tariffs for regular passenger service between named cities at regular and specified times, or any chartered flights operated by such carriers ; or
(2) any aircraft operated by the Military Air Transport Service (MATS) of the United States or by the similar military air transport service of any duly constituted governmental authority of any other recognized country; or
(3) any powered aircraft having a valid and current NC or N Standard Airworthiness Certificate issued by the Civil Aeronautics Administration of the United States, or its successor, or any similar certificate issued by the jurisdictional agency or authority of any other recognized country, and piloted by a person who then holds a valid and current Certificate of Competency of a rating authorizing him to pilot such aircraft.”
The policy defined “on the business of the Policyholder” to mean:
“The term ‘on the business of the Policyholder’ as used in this policy means on assignment by or with the authorization *295 of the Policyholder for the purpose of furthering the business of the Policyholder; provided that injuries occuring during the course of everyday travel to and from work and bonafide leaves of absence or vacations shall not be deemed to have occurred while on the business of the Policyholder.”
There is very little, if any, dispute as to the facts in this case. W. K. Lea was a member and chairman of the Credit Union Committee of the Louisiana Hospital Association. By virtue of his being a member of the Credit Union Committee of the Louisiana Hospital Association, on August 2, 1972, W. K. Lea was an insured. The undisputed evidence shows that on August 1, 1972, W. K. Lea left his home in Winns-boro, Louisiana, to attend a meeting of the Credit Union Committee in New Orleans the following day. After attending the meeting of the Committee, and while on his way back to Winnsboro, Mr. Lea stopped in Baton Rouge, at Bauman Surgical Supplies, Inc., where he met a personal friend, Robert Clement, a salesman for the firm. From Baton Rouge Mr. Lea flew as a passenger in a private plane piloted by his friend, Robert Clement, to White Castle, Louisiana, where he was killed in an airplane crash. The following material facts in this case have been stipulated by the parties:
“It is stipulated that on August 1, 1972, on assignment by Louisiana Hospital Association and/or with the authorization of the Louisiana Hospital Association for the purpose of furthering the business of the Louisiana Hospital Association, W. K. Lea left Winnsboro, Louisiana, his home and regular place of business, to attend a meeting of a committee of the Louisiana Hospital Association in New Orleans, Louisiana, which committee meeting was held at the Louisiana Hospital Association office on August 2, 1972. Mr. Lea attended the meeting and had not returned to his home or regular place of business in Winnsboro, Louisiana, when on August 2, 1972, he was killed in an airplane crash near White Castle, Louisiana. It is further stipulated that W. K. Lea stopped at Baumann Surgical Supplies, Inc., in Baton Rouge on August 2, 1972, for reasons totally unrelated to the Louisiana Hospital Association or his connection with that association or any of its committees or functions. It is also stipulated that on August 2, 1972, W. K. Lea flew as a passenger in a private airplane piloted by Robert Clement to White Castle, Louisiana, and the purpose of this flight was completely unrelated to the Louisiana Hospital Association or W. K. Lea’s connection with that association or any of its committees or functions. It is further stipulated that the airplane in which W. K. Lea flew as passenger on August 2, 1972 was a powered aircraft having a valid and current N Standard Worthiness Certificate issued by the Civil Aeronautics Administration of the United States or its successor and said airplane was piloted at the time by Robert Clement, which pilot was a person holding a valid and current certificate of competency of a rating authorizing him to pilot such aircraft.”
The appellant contends that under the provisions of the policy sued upon W. K. Lea was insured twenty-four hours a day from the minute he left his home in Winnsboro until the very moment he returned to his home, and “that any accidents occurring to him during that period of time, no matter where or at what time, were to be covered under St. Paul’s insurance policy.”
St. Paul contends that the provisions of the policy sued upon are clear and unambiguous; and that W. K. Lea was insured only when he was “on the business of the Policyholder”, as defined in the policy. St. Paul argues that since Mr. Lea admittedly was not “on the business of the Policyholder” at the time of his accidental death, the decedent was not insured at that moment; hence no recovery can be had.
*296 Prior to trial, plaintiff took the deposition, on cross-examination, of J. Everett Eaves, Jr., President of J. Everett Eaves, Inc., the agency which sold the policy as the licensed registered agent of St. Paul. In the course of the deposition, Mr. Eaves identified a letter, written by him, which accompanied the policy when it was forwarded to the Louisiana Hospital Association.
At the trial, plaintiff offered the deposition on cross-examination, and alternatively, on direct examination. The defendant objected to its introduction on cross-examination. The letter was offered in evidence, it being argued that the language of the letter altered the terms of the contracts. Article 1634 of the Louisiana Code of Civil Procedure provides :
“Any party or his representative may be called as a witness and cross-examined by the adverse party without the latter vouching for his credibility, or being precluded from impeaching his testimony, and immediately thereafter the witness thus called may be examined or cross-examined to the extent otherwise permitted by law upon the subject matter of his examination in chief by such adverse party. The court may permit the recall and further cross-examination of the party or of his representative as often as it deems such action to be in the interest of justice.
“Representative” as used in the paragraph above and in Article 1428(2) means an officer, agent or employee having supervision or knowledge of the matter in controversy, in whole or in part, whether or not he is in the employ of or connected with the party at the time his testimony is taken.”
We find that Mr. Eaves is an agent or representative of St. Paul, within the meaning of the foregoing article; and that plaintiff was entitled to call him under cross-examination. On the other hand, we do not believe that Mr. Eaves’ letter can be construed so as to change, or to explain the terms of the insurance policy. The policy clearly provides that :
“No change in this policy shall be valid until approved by an executive officer of the Company and unless such approval be endorsed hereon or attached hereto. No agent has authority to change this policy or to waive any of its provisions.”
The controversial letter has not been endorsed by an executive officer of St. Paul. We conclude Mr. Eaves’ letter to the Executive Director of the Policyholder did not have the effect of changing, modifying, or clarifying the provisions of the policy sued upon.
We, now, come to the application of the provisions of the insurance policy sued upon to the facts in this case. There is no doubt that Mr. Lea on August 1, 1972, on assignment by the Policyholder and with its authorization, left Winnsboro, Louisiana, his home and regular place of business, to attend a committee meeting of the Policyholder in New Orleans, Louisiana, on August 2, 1972. Mr. Lea attended the committee meeting on August 2, 1972, in accordance with his assignment. He then began his return trip to Winnsboro. But when he reached Baton Rouge, he joined a friend, and flew as a passenger in a private airplane to White Castle, Louisiana, where Mr. Lea and his friend, the pilot, were killéd while attempting to land the aircraft. It was stipulated that the purpose of Mr. Lea’s flight to White Castle was completely personal and in no way connected with the business of the Policyholder.
Counsel for both parties concede that they have been unable to find a case in which a Louisiana Court was faced with the issues presented in this case. Counsel for the appellant contends that the policy provides continued coverage from the time Mr. Lea left Winnsboro until he returned. Appellant relies solely on the provisions of the policy to support his contention. He *297 has cited no authority in direct support thereof.
Counsel for St. Paul has cited three Federal Court cases in support of appellee’s contention that Mr. Lea was not insured under its policy at the time of his death: White v. Continental Casualty Company, 10 Cir., 414 F.2d 549; American Casualty Company of Reading, Pennsylvania v. Gerald, 4 Cir., 369 F.2d 829; and Ollier v. Continental Casualty Company, 6 Cir., 441 F.2d 792.
In White v. Continental Casualty Company, supra, Continental issued a policy of insurance to several banks in Colorado, insuring various officers of those banks, including William M. White, the president and director of each of the banks which were holders of the policy. The hazards which were insured against were as follows :
“The Hazards Against Which Insurance is Provided Under This Policy Are, Provided Such Hazards Arise While The Insured Person Is On The Business Of The Holder, Injury Sustained In Consequence Of And During The Course Of Any Trip Made By The Insured Person, Provided Such Trip Requires The Insured Person To Travel Outside The Corporate Limits Of The Town Or City In Which He Is Regularly Employed Or Has His Residence (Excluding Everyday Travel To And From Work And Bona Fide Vacations).
“Such Trip Shall Be Deemed To Have Commenced When The Insured Person Leaves His Residence Or Place Of Regular Employment For The Purpose Of Going On Such Trip, Whichever Last Occurs, And Shall Continue Until Such Time As He Returns To His Residence Or Place Of Regular Employment, Whichever First Occurs.”
On August 16, 1966, Mr. White, who resided in Pueblo, flew to Denver on a chartered plane to attend a meeting of the advisory board of a telephone company of which he was a member. After the meeting, he returned to Pueblo and while driving away from the airport in an automobile he was struck and killed by another automobile. Mr. White’s widow filed suit against Continental alleging that Mr. White was killed in an automobile accident and that such accident was an insured hazard under the policy. A comparison of the policy provisions of the Continental policy with that of St. Paul in the'instant case shows quite similar provisions. In the White case the court stated the issue to be determined was whether Mr. White was on the business of the holder banks, at the time of his death. The court said:
“Herein lies the only question presented to the court for determination on appeal. At the time of his death, was White on the business of the holder banks ?”
The court held that Mr. White was on the business of the holder banks, at the time of his death, and, therefore, affirmed the judgment in favor of his widow, the plaintiff-appellee.
In American Casualty Company of Reading, Pennsylvania v. Gerald, 369 F.2d 829 the insurance company issued a policy of insurance which covered W. A. Gerald, an executive officer of the Policyholder, against accidental death “ . . . ‘while on the business of the Policyholder and during the course of any bona fide trip made by the Insured Person’ . . While attending a banquet honoring outstanding employees, Mr. Gerald choked to death on a piece of meat he was eating. One of the basic issues to be determined by the court in that case was whether or not the decedent was “on the business of the Policyholder” at the time of his death. In this case the cóurt made it clear that the question of whether the coverage of a policy extends to a decedent depends upon whether all of the conditions of coverage were met. The court found that recovery should be allowed, because the decedent’s death occurred under circumstances that met all of the conditions of the policy.
*298 In Ollier v. Continental Casualty Company, 441 F.2d 792, a group accident insurance policy issued by the defendant to the decedent’s employee, provided coverage only for injury or death of employees sustained while riding on commercial airlines on the business of the employer. The court held that the only issue to be determined was whether the decedent was on the business of the employer within the meaning of the policy at the time of his death.
The basic issue considered by the court in each of the Federal Court cases cited by appellee was whether or not the decedent was “on the business of the Policyholder,” at the time of his death. The hazards insured in the policies considered in the Federal Court cases are quite similar to the hazards insured by St. Paul’s policy herein.
The insurance policy in the instant case, in part, provides:
“The hazards against which insurance is provided under this policy are such injuries occurring to to the Insured Person, anywhere in the world, during travel and sojourn while ‘on the business of the Policyholder’ . . .”
The term “on the business of the Policyholder” is defined to mean “on assignment by or with the authorization of the Policyholder for the purpose of furthering the business of the Policyholder; .” Mr. Lea’s death was accidental. But at the time of his death was Mr. Lea “on the business of the Policyholder?” It was admitted that Mr. Lea waS not on the business of the Policyholder, at the time of his death. Therefore, we concur in the conclusions of the trial court which read as follows:
“The circumstances of Mr. Lea’s tragic death show that he had departed from the scope of his employment with the Louisiana Hospital Association to such an extent that he was no longer within the coverage of the insurance policy.” * ***** * “Under these circumstances, W. K. Lea had detoured from his route home to such an extent and for purely personal reasons that he was no longer on the business of the Louisiana Hospital Association. Therefore, the insurance policy then in force would exclude Mr. Lea from coverage until he had reentered his employment.”
We conclude the provisions of the insurance policy sued upon are clear and unambiguous, and having found that Mr. Lea was not afforded coverage at the time of his death, we find it unnecessary to consider the remaining issues raised by appellant on appeal.
For the above and foregoing reasons, the judgment of the trial court is affirmed. The costs of this appeal are assessed to plaintiff-appellant.
Affirmed.