306 So.2d 740 (1975)
Mrs. W. K. LEA, Individually and as widow of W. K. Lea and as the Tutrix of her minor children, Robyn Lea and Reid Lea
v.
ST. PAUL FIRE AND MARINE INSURANCE CO.
No. 54989.
Supreme Court of Louisiana.
January 20, 1975.
Neil H. Mixon, Jr., McCollister, Belcher, McCleary & Fazio, Baton Rouge, for plaintiff-applicant.
A. G. Seale, John Swanner, Seale, Smith & Phelps, Baton Rouge, for defendant-respondent.
CALOGERO, Justice.
This case involves a claim for accidental death benefits ($100,000, plus penalties and attorney's fees) under a health and accident group insurance policy issued by the defendant, St. Paul Fire and Marine Insurance Company to the Louisiana Hospital Association.
Both the trial court and the Court of Appeal denied recovery finding that decedent was not afforded coverage at the time of his death under the provisions of the insurance policy. 294 So.2d 293 (La.App. 1st Cir. 1974). We granted writs, 299 So.2d *741 353 (La.1974), and now reverse the findings of the lower courts.
Plaintiff, Mrs. W. K. Lea, sued individually, and in her capacity as widow of W. K. Lea and tutrix of their minor children, Robyn and Reid Lea. Her initial claim as a designated beneficiary is admittedly without merit, the parties acknowledging that the beneficiary under the policy is the estate of the deceased. Thus her claim as widow and as tutrix is properly before us.[1] She claims these accidental death benefits because of Mr. Lea's death in a plane crash at White Castle, Louisiana on August 2, 1972.
The result in this case is dictated by proper construction of the policy provisions coupled with decedent's activity at or about the time of his death. The latter are undisputed. It is the application of the policy provisions to that activity of decedent upon which the result in this case turns.
Those undisputed, in fact, stipulated facts, are set forth as part of the Court of Appeal findings as follows:
"W. K. Lea was a member and chairman of the Credit Union Committee of the Louisiana Hospital Association. By virtue of his being a member of the Credit Union Committee of the Louisiana Hospital Association, on August 2, 1972, W. K. Lea was an insured. The undisputed evidence shows that on August 1, 1972, W. K. Lea left his home in Winnsboro, Louisiana to attend a meeting of the Credit Union Committee in New Orleans the following day. After attending the meeting of the Committee, and while on his way back to Winnsboro, Mr. Lea stopped in Baton Rouge, at Bauman Surgical Supplies, Inc., where he met a personal friend, Robert Clement, a salesman for the firm. From Baton Rouge Mr. Lea flew as a passenger in a private plane piloted by his friend, Robert Clement, to White Castle, Louisiana, where he was killed in an airplane crash. The following material facts in this case have been stipulated by the parties:
"`It is stipulated that on August 1, 1972, on assignment by Louisiana Hospital Association and/or with the authorization of the Louisiana Hospital Association for the purpose of furthering the business of the Louisiana Hospital Association, W. K. Lea left Winnsboro, Louisiana, his home and regular place of business, to attend a meeting of a committee of the Louisiana Hospital Association in New Orleans, Louisiana, which committee meeting was held at the Louisiana Hospital Association office on August 2, 1972. Mr. Lea attended the meeting and had not returned to his home or regular place of business in Winnesboro, Louisiana, when on August 2, 1972, he was killed in an airplane crash near White Castle, Louisiana. It is further stipulated that W. K. Lea stopped at Baumann Surgical Supplies, Inc., in Baton Rouge on August 2, 1972, for reasons totally unrelated to the Louisiana Hospital Association or his connection with that association or any of its committees or functions. It is also stipulated that on August 2, 1972, W. K. Lea flew as a passenger in a private airplane piloted by Robert Clement to White Castle, Louisiana, and the purpose of this flight was completely unrelated to the Louisiana Hospital Association or W. K. Lea's connection with that association or any of its committees or functions. It is further stipulated that the airplane in which W. K. Lea flew as passenger on *742 August 2, 1972 was a powered aircraft having a valid and current N Standard Worthiness Certificate issued by the Civil Aeronautics Administration of the United States or its successor and said airplane was piloted at the time by Robert Clement, which pilot was a person holding a valid and current certificate of competency of a rating authorizing him to pilot such aircraft.'" 294 So.2d at 295.
The controverted question is whether decedent's death arose out of an insured hazard.
The health and accident policy issued, under which decedent was admittedly a Class II rather than Class I insured,[2] contained one sheet which incorporated the various provisions relied upon by the respective parties to this litigation. (See footnote 3[3] for a reproduction of that entire *743 coverage sheet with the pertinent provisions underscored and with four portions thereof noted by the author by the letters A through D for convenience in following the succeeding discussion.)
Plaintiff argues that since his travel and sojourn (see A and B of Footnote 3 below) away from his home in Winnsboro (to New Orleans and return) was admittedly a business trip (C), coverage began at "the start of such business trip" and would terminate only "upon return to his place of regular employment or home..." (C). In effect, it is plaintiff's position that 24 hour coverage (A) is afforded with respect to such travel even though he should not during this entire period be furthering the business of the Louisiana Hospital Association.
Defendant would have us interpret these provisions differently. They contend that only "business travel" and (business) "sojourn" (A) is covered, that only "travel and sojourn while `on the business of the policyholder' ..." (B) is contemplated, and that thus the time when an insured is covered is limited to those instances when the insured is "on assignment by or with the authorization of the policyholder for the purpose of furthering the business of the policyholder," (D), i. e., that he was insured during his Winnsboro-New Orleans-Winnsboro travel only at those precise instances when he was on the business of the policyholder as defined in the policy. Accordingly, they argue that the decedent was not covered when he "deviated" and flew from Baton Rouge to White Castle with his friend, Robert Clement, for reasons "completely unrelated to the Louisiana Hospital Association or (his) connection with that Association or any of its employees or functions."
We believe that based upon an interpretation of the policy provisions, plaintiff has the better argument, where, as here, he admittedly left his home in Winnsboro, Louisiana to attend a New Orleans meeting of the Louisiana Hospital Association and had not returned to Winnsboro at the time of his unfortunate accident. These provisions, "twenty-four hour business, travel and sojourn outside City limits ...", "injuries occurring... anywhere in the world, during travel and sojourn `on the business of the policyholder' ...", and "coverage begins at the actual start of such business trip ... coverage terminates upon the insured person's return to his place of regular employment or home ..." (see A, B and C respectively, footnote 3) seem, rather unambiguously, to require coverage twenty-four hours a day from the minute he left his home in Winnsboro, until the very moment of his return to his home in Winnsboro. We would likely so hold but for the fact that our respected brethren in the trial court and the Court of Appeal have found the same policy provisions unambiguously dictating a contrary finding (of noncoverage). In deference to those contrary holdings and in light of the arguable reliance upon "business of the policyholder" in the Description of Hazards (B) and the definition thereof in the Definition clause (D) we find, rather, that the policy provisions read and considered as a whole are ambiguous, uncertain and susceptible of differing interpretations and constructions.
Where insurance policy provisions are ambiguous, the Louisiana Civil Code and our jurisprudence require a construction which is most favorable to the insured and which effectuates coverage rather than defeats it.
*744 Article 1957 of the Louisiana Civil Code provides:
"In a doubtful case the agreement is interpreted against him who has contracted the obligation."
Article 1958 of the Louisiana Civil Code provides:
"But if the doubt or obscurity arise for the want of necessary explanation which one of the parties ought to have given, or from any other negligence or fault of his, the construction most favorable to the other party shall be adopted, whether he be obligor or obligee."
Snell v. Stein, 261 La. 358, 259 So.2d 876 (1972); Creole Explorations, Inc. v. Underwriters at Lloyd's, 245 La. 927, 161 So. 2d 768 (1964); Corporation of Roman Catholic Church v. Royal Ins. Co., 158 La. 601, 104 So. 383 (1925).
We find it unnecessary to rely upon the letter of defendant's agent, J. Everrett Eaves, Jr. of J. Everrett Eaves, Inc., attached to (or accompanying) the policy.[4] It is worth noting, however, that in said letter, Mr. Eaves opined that Class II insureds "are covered from point of origin of a trip. For example, a member living in New Orleans and planning to attend a Committee meeting in Lafayette would be covered from the minute he started out from his home in New Orleans and would be continued to be covered until his return."
Counsel for both parties have conceded that there has been no reported Louisiana decision with the issues presented in this case. The Court of Appeal therefore cited and found analogously favorable to defendant's position, three federal decisions: Ollier v. Continental Casualty Company, 441 F.2d 792 (6th Cir. 1971); White v. Continental Casualty Co., 414 F.2d 549 (10th Cir. 1969) and American Casualty Co. of Reading, Pennsylvania v. Gerald, 369 F.2d 829 (4th Cir. 1966). Interestingly, in each of these cases the court finding was in favor of, rather than against, insurance coverage. The reason the cases were cited, however, was that the court in each of them found dispositive of the pertinent issue there, whether the insured at the time of accidental death was on the business of his respective employer.
These cases are not controlling here nor even persuasive, in our opinion, principally because the policy language in those cases relative to the hazard insured against, much more narrowly concerned business activity risks, and none of them contained the "coverage begins ... coverage terminates ..." language involved in the subject policy.
In our view the relevance of these three decisions is only to our need in this case to determine that decedent's Winnsboro New OrleansWinnsboro trip in the overall was a business trip. And, of course, such was stipulated by the parties.
The plaintiff claims, in addition to the $100,000 due under the policy, that the defendant is liable as well for penalties (of 100% of the amount due as provided by subsection A of R.S. 22:657), attorney's fees, interest and costs. The defendant argues that, if it is liable for any penalty (which they deny), the maximum penalty which may be imposed is 6% per annum on the amount due as provided by subsection B of R.S. 22:657 and not 100% as contended by the plaintiff. Additionally the defendant denies that it is liable for any attorney's fees.
The defendant correctly interprets R.S. 22:657 that claims for accidental death arising under health and accident policies are governed by subsection B of R.S. 22:657 (which allows only a 6% penalty *745 per annum and makes no provision for attorney's fees).
We do not find the imposition of any penalty to be warranted by the facts of this case. The plaintiff's claim for attorney's fees is also denied.
For the above assigned reasons, the judgments of the District Court and the Court of Appeal dismissing the plaintiff's suit are reversed and it is ordered that there be judgment in favor of Mrs. W. K. Lea as widow and as tutrix on behalf of the minor children, Robyn and Reid,[5] and against the defendant, St. Paul Fire and Marine Insurance Company, in the sum of $100,000 with legal interest from date of judicial demand until paid. All costs are assessed against the defendant.
Reversed and rendered.
NOTES
[1] A judgment in the Succession of Woodward Kinchen Lea, Jr., probate number 1662 on the docket of the Fifth Judicial District Court for the Parish of Franklin, placed Mrs. Lea in possession on an undivided onehalf interest of the community of acquets and gains and of a usufruct over the decedent's share of the community. That judgment recognized the two children as the sole heirs of the decedent and placed them in possession of the decedent's estate, subject to the usufruct of their mother over the community property, each having an undivided one-half interest in the estate.
[2] There were two classes of persons insured under the policy. Class I consisted of eleven full time active staff employees (under age 70) of the Louisiana Hospital Association. Class II consisted of all those active Committee members and Trustees travelling on association business, under 70 years of age, and whose names are on file with the policyholder. (Schedule of Persons Insured," attached to policy.)
[3] A. TWENTY-FOUR HOUR BUSINESS TRAVEL AND SOJOURN OUTSIDE CITY LIMITSSCHEDULED AIRLINE, MATS AND NC OR N STANDARD AIRCRAFT, EXCLUDING POLICYHOLDER OWNED/OPERATED AIRCRAFT COVERAGE TA-8(1)

Description of Hazards
B. The hazards against which insurance is provided under this policy are such injuries occurring to the Insured Person, anywhere in the world, during travel and sojourn while "on the business of the Policyholder," provided such travel is to a point or points located outside the city or town in which the Insured Person is regularly employed, subject to the following qualifications,
C. (1) Coverage begins at the actual start of such business trip whether it is from the Insured Person's place of regular employment, home or other location; coverage terminates upon the Insured Person's return to his place of regular employment or home, whichever shall first occur.
(2) With respect to flying in aircraft, coverage shall not apply except:
(A) While riding as a passenger, and not as a pilot, operator or member of the crew, in or on (including boarding or alighting from):
(1) any civilian scheduled air carrier holding certificate, license or similar authorization for civilian scheduled air carrier transportation by the country of the aircraft's registry, and which in accordance therewith files, prints, maintains and publishes schedules and tariffs for regular passenger service between named cities at regular and specified times, or any chartered flights operated by such carriers; or
(2) any aircraft operated by the Military Air Transport Service (MATS) of the United States or by the similar military air transport service of any duly constituted governmental authority of any other recognized country; or
(3) any powered aircraft having a valid and current NC or N Standard Airworthiness Certificate issued by the Civil Aeronautics Administration of the United States, or its successor, or any similar certificate issued by the jurisdictional agency or authority of any other recognized country, and piloted by a person who then holds a valid and current Certificate of Competency of a rating authorizing him to pilot such aircraft.
Additional Exclusions
The following are to be added as Exclusions under the policy:
5. Accidental bodily injuries occurring while the Insured Person is flying in any aircraft being used for field or crop dusting or spraying, seeding, fire fighting, sky writing, pipe-line inspection, aerial photography, hunting, exploration, racing or endurance tests, or exhibition stunt flying.
6. Accidental bodily injuries occurring while the Insured Person is flying in any aircraft owned or operated by the Policyholder.
Definition
D. The term "on the business of the Policyholder" as used in this policy means on assignment by or with the authorization of the Policyholder for the purpose of furthering the business of the Policyholder; provided that injuries occurring during the course of everyday travel to and from work and bonafide leaves of absence or vacations shall not be deemed to have occurred while on the business of the Policyholder.
ST. PAUL FIRE AND MARINE INSURANCE COMPANY
Form No. 13822A TFH Ed. 10-61 (Emphasis provided).
[4] Plaintiff had contended that the letter was itself a part of the contract of insurance, or alternatively that it should be admitted to clarify the ambiguous and unclear provisions in the main body of the contract.
[5] By this judgment we have not attempted to determine whether the amount due constitutes community or separate property, nor correspondingly the respective rights in same, of Mrs. Lea and her two children.