SULLIVAN, Justice.
Players on a local youth soccer team seek to recover under the state youth soccer governing association’s business auto-insurance policy for injuries sustained when the van in which they were riding was involved in an accident. Because the van was not being used in the business of the association, a condition for coverage under the insurance policy at issue, the injured players may not recover.
Background
The plaintiffs in this case were players (or parents of players) on a soccer team called Carmel Commotion. Carmel Commotion was one of a number of teams fielded by the Carmel United Soccer Club in 2004. The Carmel United Soccer Club is an affiliated member in good standing of the Indiana Youth Soccer Association (“IYSA”). The IYSA is a not-for-profit corporation that governs youth soccer in Indiana; it is charged with developing and promoting youth soccer in Indiana in conjunction with various national organizations.
In June, 2004, Carmel Commotion traveled with the IYSA’s approval to Colorado to participate in a youth soccer tournament. Mark Castro, the team’s IYSA-certified coach, organized the trip.
On June 12, 2004, while attending the soccer tournament in Colorado, the team decided to go on a white-water rafting trip as a “team-building” activity. Castro transported the players to the rafting activity in a passenger van that he had rented for the team’s use during the trip. While en route, the van collided with another vehicle, resulting in injuries to several players.
*821 The injured players, by their parents (referred to collectively as “Players”), sued Castro and the IYSA’s insurance carrier, Virginia Surety Co., Inc. (The IYSA itself and another party were also named as defendants but were later dismissed by stipulation.) The Players sought a declaration that the IYSA’s insurance policy through Virginia Surety provided coverage while Castro drove them to the whitewater rafting activity. Both Virginia Surety and the Players moved for summary judgment. Following a hearing, the trial court granted summary judgment in favor of Virginia Surety.
A divided panel of the Court of Appeals affirmed, the majority holding under the relevant insurance policy language that Castro was not using the rented van “in the business of’ the IYSA at the time of the accident. Haag v. Castro, 934 N.E.2d 189, 195-96 (Ind.Ct.App.2010).
The Players sought, and we granted, transfer, Haag v. Castro, 950 N.E.2d 1200 (Ind.2011) (table), thereby vacating the opinion of the Court of Appeals, Ind. Appellate Rule 58(A).
Discussion
I
Virginia Surety issued a commercial lines policy to the IYSA that provided business auto coverage in certain circumstances. At issue in this case is an endorsement for “hired” (rented) vehicles that reads as follows:
With respect to hired auto and employers non-ownership liability, the insured means the named insured, member associations and its clubs, leagues teams, employees, volunteers, executive officers, directors, stockholders, therein, but only luhile the automobile is being used in the business of the Named Insured. Coverage is not provided on behalf of the parents, managers, coaches, umpires, officials, referees, of the insured or volunteers using any automobile (personally owned, leased, borrowed or employer furnished) in the transportation of youth or adult participants to and from athletic games or athletic events, including but not limited to practices, exhibitions, post season and scheduled events.
Appellants’ App. 101 (emphasis added).
The Players make three arguments about this endorsement.
First, they contend that under the first sentence of the endorsement, the rented van in which they were riding was being used in the business of the IYSA.
Second, they contend that the second sentence of the endorsement does not apply because they were not traveling to an athletic game or event; rather, they were traveling to a “team-building” event.
Third, they contend that the endorsement must be construed to provide coverage in these circumstances because if it is not, coverage would not be available under any reasonably expected set of circumstances and, therefore, would be “illusory.”
II
As the Court of Appeals recognized, Castro may well be an “insured” under the policy. Haag, 934 N.E.2d at 193. But the dispositive issue is whether Castro was using the rented van “in the business of’ the IYSA at the time of the accident.
The policy does not define “in the business of’ and the Players argue that this creates an ambiguity that should be construed against the insurer. Of course, that a policy does not define a term does not necessarily make the term ambiguous. Wagner v. Yates, 912 N.E.2d 805, 810 (Ind. 2009). Furthermore, “an ambiguity is not affirmatively established simply because controversy exists and one party asserts *822 an interpretation contrary to that asserted by the opposing party.” Id. (citing Beam v. Wausau Ins. Co., 765 N.E.2d 524, 528 (Ind.2002)). We find that the IYSA’s organizational documents combined with widespread general familiarity with the business of sports governing bodies render the term unambiguous here. To the extent that Lea v. St Paul Fire and Marine Insurance Co., 306 So.2d 740, 743 (La.1975), cited by the Players, holds to the contrary, we respectfully disagree with our Louisiana colleagues.
And in fact, the Players as well as Virginia Surety direct us to the IYSA’s organizational documents for insight into its “business.” The IYSA’s Articles of Incorporation declare its relevant purposes as follows:
SECTION 1. To develop, promote and administer the game of soccer among Youth under 19 years of age residing within the State of Indiana.
SECTION 2. To encourage and assist in the development and growth of community leagues, associations, organizations, programs and teams so that soccer is made available to more Indiana residents in all levels of competition.
SECTION 3. To develop and encourage sportsmanship and playing proficiency by all players and persons involved in soccer in the State of Indiana.
SECTION 4. To affiliate with USYSA and to encourage registration of all Indiana Youth teams with the USYSA.
SECTION 5. To conduct tournaments of Youth team competition and to sanction said teams to enter and participate in said tournaments.
SECTION 6. To do any and all other acts necessary or desirable in the furtherance of the foregoing purposes and for the good of Youth soccer.
Appellants’ App. 815. The IYSA also has a set of “Playing Rules” that “are intended to provide a uniform set of guidelines governing: player eligibility, registration, team formation, player assignments, playing rules, and standards of Sportsmanship and conduct for all Member Organizations.” Id. at 820, 825.
We read these organizational documents to identify three lines of endeavor or “business” for the IYSA: (1) “promoting” soccer; (2) “regulating” competition, leagues, teams, and players (e.g., registering teams, certifying coaches and referees, sanctioning participation in tournaments, etc.); and (3) “conducting” specific events. Thus, when the Virginia Surety policy requires that the automobile be “used in the business of the [IYSA] ” for there to be coverage, the policy requires that the automobile be used in one of these three lines of business — “promoting,” “regulating,” or “conducting.”
Perhaps because our state is home to so many sports governing bodies, there is widespread general familiarity with their business. These bodies are not in the business of “competing” in athletic events — their business is promoting, regulating, and sometimes sponsoring competition. Likewise, the IYSA is not in the business of “competing.” It is a state governing body, acting in conjunction with the United States Youth Soccer Association, the United States Soccer Federation (also known as U.S. Soccer, the national governing body of the sport),[1] and the United States Olympic Committee.
*823 The Players argue that their participating in the Colorado soccer tournament was “in the business of’ the IYSA (and therefore the use of the rented van was “in the business of’ the IYSA) because the IYSA not only explicitly approved but also encouraged them to participate in the tournament. They reason that “[t]he business of the IYSA involves the organization of competitive soccer teams and their participation in soccer tournaments such as the tournament in June, 2004 in Colorado.” Appellants’ Br. 21. Thus, they argue that “any transportation from the time the team commenced their trip to Colorado for the tournament until the time they returned to Indiana was in furtherance of the business of the IYSA.” Id.[2]
To interpret the endorsement’s “in the business of’ language, the majority of the Court of Appeals panel relied on re-spondeat superior principles. Haag, 934 N.E.2d at 193-95 (citing Liberty Mut. Ins. Co. v. Conn. Indem. Co., 55 F.3d 1333, 1335-37 (7th Cir.1995)).[3] While it may be *824 that respondeat superior analysis could be helpful in such situations, we believe that here only a straightforward application of the plain language of the policy is necessary to resolve the question. “ ‘An insurance policy that is unambiguous must be enforced according to its terms, even those terms that limit an insurer’s liability.’ ” Prop.-Owners Ins. Co. v. Ted’s Tavern, Inc., 853 N.E.2d 973, 978 (Ind.Ct.App. 2006) (alteration deleted) (quoting Amerisure, Inc. v. Wurster Constr. Co., 818 N.E.2d 998, 1002 (Ind.Ct.App.2004)). This policy covers the IYSA in the event that it is subject to liability because of an auto accident if, and only if, a hired or non-owned automobile is being “used in the business of’ that organization — either (1) promoting soccer or (2) regulating leagues, teams, players, and referees or (3) conducting specific events. Simply stated, neither Carmel Commotion nor Castro were doing any of those things and so the accident was not covered.
What Carmel Commotion (with Castro’s help) was doing was participating in a specific event, a soccer tournament; Car-mel Commotion’s “business” is competing — along with the practicing, “team-building,” and the like that comes with it. And while the IYSA promotes tournaments and regulates who plays in tournaments and even sponsors tournaments, as discussed above, the IYSA itself does not compete. The IYSA promotes soccer. It regulates playing soccer. It conducts soccer tournaments. But when an IYSA-reg-istered team, with the help of its coach, competes in a tournament (even a tournament sponsored or sanctioned by the IYSA), the team is engaged in its own business, not that of the IYSA.
Examining the second sentence of the endorsement helps in understanding this point. It specifies that the policy does not cover any automobiles used “in the transportation of youth or adult participants to and from athletic games or athletic events.” Why not? Because participating in the soccer games themselves — the competition — is not the business of the IYSA. (In this regard, the second sentence of the endorsement is not an “exclusion” but an amplification of the endorsement’s limitation of the coverage of hired or non-owned automobiles to those being “used in the business.”)
The fact that coverage is not available here does not make the coverage the IYSA purchased “illusory.” “Coverage under an insurance policy is not illusory unless the policy would not pay benefits under any reasonably expected set of circumstances.” Lexington Ins. Co. v. Am. Healthcare Providers, 621 N.E.2d 332, 339 (Ind.Ct.App.1993) (citing Meridian Mut. Ins. Co. v. Richie, 544 N.E.2d 488 (Ind. 1989)), trans. denied. That the IYSA might need auto-liability insurance in respect of hired or non-owned vehicles is clear. In the course of traveling to promote youth soccer or in transporting a celebrity guest — perhaps a member of our national team like Lauren Cheney or Lori Lindsey — to an IYSA sponsored event, an employee or volunteer might be involved in an auto accident while using a rented vehicle. The coverage is not illusory.
In her dissent in the Court of Appeals, Judge Riley presses the importance she places on the IYSA’s explicit approval of the Colorado trip. Pointing to IYSA Playing Rule 3.6-2’s provision that teams traveling with a permit are covered by insurance, she maintains that because Carmel Commotion followed all the rules for traveling out-of-state, the team, “without any other limitations placed on insurance coverage, should have been entitled to assume that they were covered for the duration of the trip, regardless of the activities scheduled.” Haag, 934 N.E.2d at 196 (Riley, J., *825 dissenting). This is a highly respectable argument but it does not go to the construction of the “used in the business of’ endorsement. We have not been asked to decide whether the Players had any claim against IYSA, only whether Virginia Surety has liability under the endorsement.
Conclusion
Because Castro was not using the automobile “in the business” of the IYSA, the policy provides no coverage. The judgment of the trial court is affirmed.
SHEPARD, C.J., concurs.
RUCKER, J., concurs in result.
DICKSON, J., dissents with separate opinion.
DAVID, J., not participating.

. See History — U.S. Soccer, http://www. ussoccer.com/AboutyHistory.aspx (last visited Jan. 6, 2012); About U.S. Soccer — U.S. Soccer, http://www.ussoccer.com/About/About-Home.aspx (last visited Jan. 6, 2012). Pursuant to the Ted Stevens Olympic and Amateur Sports Act, the United States Olympic Committee may recognize an eligible amateur *823 sports organization as the "national governing body” for a sport. 36 U.S.C. § 220521 (2006). Under 36 U.S.C. § 220524, a national governing body has the following general duties for the sport that it governs:
(1) develop interest and participation throughout the United States and be responsible to the persons and amateur sports organizations it represents;
(2) minimize, through coordination with other amateur sports organizations, conflicts in the scheduling of all practices and competitions;
(3) keep amateur athletes informed of policy matters and reasonably reflect the views of the athletes in its policy decisions;
(4) disseminate and distribute to amateur athletes, coaches, trainers, managers, administrators, and officials in a timely manner the applicable rules and any changes to such rules of the national governing body, the corporation, the appropriate international sports federation, the International Olympic Committee, the International Para-lympic Committee, and the Pan-American Sports Organization;
(5) allow an amateur athlete to compete in any international amateur athletic competition conducted by any amateur sports organization or person, unless the national governing body establishes that its denial is based on evidence that the organization or person conducting the competition does not meet the requirements stated in section 220525 of this title;
(6) provide equitable support and encouragement for participation by women where separate programs for male and female athletes are conducted on a national basis;
(7) encourage and support amateur athletic sports programs for individuals with disabilities and the participation of individuals with disabilities in amateur athletic activity, including, where feasible, the expansion of opportunities for meaningful participation by individuals with disabilities in programs of athletic competition for able-bodied individuals;
(8) provide and coordinate technical information on physical training, equipment design, coaching, and performance analysis; and
(9) encourage and support research, development, and dissemination of information in the areas of sports medicine and sports safety.

. The Players cite Regan v. Mutual of Omaha Insurance Co., 375 Ill.App.3d 956, 314 Ill.Dec. 336, 874 N.E.2d 246 (2007) in support of their argument that coverage is available here. The insurance policy at issue in Regan provided coverage for "covered travel.” 314 Ill.Dec. 336, 874 N.E.2d at 251-52. There is no analogous provision in the policy before us. As Regan depended on policy language not found in the present case, we reject the Players' general assertion that "[ijnsurance for athletic teams is effective from the time the team leaves until the time it returns.” Pet. to Transfer 8.

. The court in Liberty Mutual interpreted "in the business of” to mean furthering commercial interests. 55 F.3d at 1335 (citing Hartford Ins. Co. v. Occidental Fire & Cas. Co., 908 F.2d 235, 239 (7th Cir.1990)). We agree with the Players that a similar interpretation is not appropriate in the present case. The IYSA is a not-for-profit entity with no apparent "commercial interests.”