**HARTFORD INSURANCE COMPANY OF the SOUTHEAST, Plaintiff–Appellant,**

v.

**OCCIDENTAL FIRE & CASUALTY COMPANY OF NORTH CAROLINA, Defendant–Appellee.**

No. 89–3598.

United States Court of Appeals, Seventh Circuit.

Argued June 6, 1990.

Decided July 27, 1990.

Randy S. Parlee, Peter F. Mullaney, Peterson, Johnson & Murray, Milwaukee, Wis., for plaintiff-appellant.

Steven W. Celba, Michael D. Stotler, James S. Smith, Borgelt, Powell, Peterson & Frauen, Milwaukee, Wis., for defendant-appellee.

Before WOOD, Jr., FLAUM, and KANNE, Circuit Judges.

FLAUM, Circuit Judge.

This diversity case involves an insurance coverage dispute. Hartford Insurance Company seeks indemnification from defendant Occidental Insurance Company for claims arising from an accident involving a truck tractor leased to Hartford's insured. Occidental insured the truck's owner. The district court granted summary judgment for Occidental on the ground that its policy excluded coverage because Hartford's insured was using the vehicle in its business at the time of the accident. Hartford appeals; we affirm.

I.

The facts are stipulated. On September 10, 1985, John Dunn, driving a truck tractor owned by Rich Transport of Dade City, Florida ("Rich"), rear-ended a car in Fort Wayne, Indiana. At the time, Dunn and his vehicle were leased to Lykes Transport ("Lykes"), an interstate carrier operating under the authority of the Interstate Commerce Commission. Several days earlier, Lykes had dispatched Dunn to Fort Wayne to deliver a load of frozen orange juice concentrate. Dunn had not completed that delivery at the time of the accident.

Before Dunn left Dade City, Larry Rich, owner of Rich Transport, instructed him to have a faulty freon valve on the trailer repaired after delivering his load in Fort Wayne.[1] The trailer leaked freon, and Dunn had to replenish the trailer's freon supply during the trip. Not surprisingly, when Dunn attempted to deliver the juice in Fort Wayne the buyer refused to accept it because it was too warm. Dunn informed Lykes of the buyer's rejection and Lykes instructed him to take the juice to a cold-storage facility nearby. After placing the juice in storage, Dunn again telephoned Lykes and was again told to wait for further instructions.

Dunn then took his trailer to Thermo King, a repair facility in Fort Wayne, to have the freon valve repaired. He left the trailer there and "bobtailed"[2] his tractor to a truck stop, where he remained until the following afternoon when Thermo King notified him that the repairs had been completed. During this interval, Larry Rich requested that Lykes permit Dunn to pick up another load for his return trip to Florida. Lykes refused because it needed Dunn's truck to return the orange juice concentrate to Florida if the buyer again refused to accept delivery.

While driving to Thermo King to pick up his trailer, Dunn collided with a car that had stopped in front of him for a school bus. After the police completed their report at the scene of the accident, Dunn proceeded to Thermo King, picked up the trailer, and returned to the truck stop. Dunn called Lykes and was told to retrieve the juice the next morning and to deliver it to the buyer. The following morning, however, the buyer again refused to accept

---

1. Rich was obligated under paragraphs 4C and 5B of the lease to maintain the vehicles supplied to Lykes.

2. "Bobtailing" is trucking parlance for driving the truck tractor without an attached trailer. *Reeves v. B & P Motor Lines, Inc.,* 82 N.C.App. 562, 346 S.E.2d 673, 675 (1986).

delivery of the juice. At Lykes' direction, Dunn returned to Florida with the juice.

Dunn's truck was insured by both parties to this suit. Hartford insured the truck for Lykes; Occidental insured it for Rich Transport. Hartford paid the claims arising from Dunn's accident and now seeks indemnification from Occidental on the ground that Dunn was working for Larry Rich and Rich Transport when he took his truck to Thermo King to repair the freon valve. Since Dunn was on an errand for Rich at the time of the accident, Hartford argues, Rich's policy with Occidental also covers the accident. In response, Occidental notes that its policy excludes coverage when the vehicle is operating "in the business of" the lessee and claims that because the vehicle was leased to Lykes and under Lykes' operational control the policy exclusion applies.[3] The district court found that, as a matter of law, the undisputed facts demonstrated that Dunn's truck was being used "in the business of Lykes" at the time of the accident and granted Occidental's motion for summary judgment.

## II.

■ The sole issue in this case is whether, at the time of the accident, Dunn was operating for Lykes Transport or Rich Transport. This is a state law issue germane only to Occidental's obligation under its policy with Rich Transport; federal regulations govern Lykes' liability as lessee of the equipment. The federal regulations governing the lease of vehicles by interstate carriers require lessees such as Lykes to "assume complete responsibility for the operation of the equipment for the duration of the lease." 49 C.F.R. § 1057.12(c)(1); see also 49 C.F.R. §§ 1057.12(j)(1), .22(c)(2). To this end, authorized interstate carriers are required to maintain minimum levels of liability insurance coverage for "any final judgment recovered against such motor carrier for bodily injuries to or the death of any person resulting from the negligent operation, maintenance or use of motor vehicles in transportation...." 49 C.F.R. § 1043.2(a)(1); see also 49 U.S.C. § 10927(a)(1); 49 C.F.R. § 1057.12(j). Lykes was thus directly responsible for damages arising from Dunn's accident, whether or not the truck was being used in its business at the time of the collision. See Planet Ins. Co. v. Transport Indemnity Co., 823 F.2d 285, 288 (9th Cir.1987) ("the federal scheme do[es] not require that covered losses occur while the driver is in the scope of employment [of the lessee] or acting under common-law principles of vicarious liability"). Hartford's policy covered all such damages; it paid the claims promptly and does not contest its own liability.

In contrast, federal law imposes no financial responsibility requirements on Rich Transport in its capacity as the equipment lessor. Rich agreed in its contract with Lykes, however, to obtain "bobtail" insurance on its equipment, and the terms of that contract govern Occidental's liability.[4] Wisconsin law, rather than federal law, thus governs resolution of this dispute.[5]

---

**3.** The insurance Occidental provided is commonly known as "bobtail" insurance. See 49 C.F.R. § 1057.12(j); Wenkosky v. Protective Ins. Co., 698 F.Supp. 1227, 1228 (M.D.Pa.1988). Nevertheless, the coverage is not limited to occasions when the truck is operating without a trailer. The exclusion in Occidental's policy reads in its entirety:

TRUCKMEN (INSURANCE FOR NON-TRUCKING USE): It is agreed that such insurance as is afforded by the policy for Bodily Injury Liability, for Property Damage Liability, with respect to any automobile described herein or designated in the policy as subject to this endorsement, does not apply.

(A) To any person or organization, or any agent or employee thereof, other than the Named Insured, engaged in the business of transporting property by automobile for others, or while en route for such purposes at the request of any person or organization in such business.

(B) While the automobile or any trailer attached thereto is used to carry property in any business.

(C) While the automobile is being used in the business of any person or organization to whom the automobile is rented.

**4.** Occidental does not contest Rich Transport's liability for Dunn's accident.

**5.** In a diversity case, the substantive law of the forum governs, but that law includes the forum's choice of law rules. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85

The relevant clause in the policy excludes coverage "[w]hile the automobile is being used in the business of any person or organization to whom the automobile is rented." Occidental argues that Rich's equipment was "in the business of" Lykes at all times the lease was in effect because federal law required Lykes, as the lessee, to maintain exclusive control over leased vehicles. Federal law, it claims, operates to relieve it of liability whenever Rich's equipment was leased to another.

We disagree. The fact that Lykes was leasing the truck is evidence that it was being used in Lykes's business, but it is not dispositive. To hold otherwise would render Rich's coverage a virtual nullity. The clear language of paragraph (C) of the Truckmen's endorsement controverts Occidental's interpretation by protecting Occidental from liability only when (1) the vehicle is rented *and* (2) it is being used in the lessee's business. The contract clearly contemplates occasions on which the vehicle, though rented, would not be engaged "in the business" of another. At such times, Occidental's policy applies. As Hartford notes, Occidental could not avoid liability under its insurance contract had the accident occurred while Dunn was enjoying a "night on the town" in his rig simply because, at the time, it was rented to another company.

This reading does not undermine the policies reflected in the ICC regulations governing equipment leases. These rules were intended to safeguard the public by preventing authorized carriers from circumventing applicable regulations by leasing the equipment and services of independent contractors exempt from federal regulation. *See generally American Trucking Ass'ns, Inc. v. United States*, 344 U.S. 298, 302–06, 73 S.Ct. 307, 310–13, 97 L.Ed. 337 (1953) (discussing policies behind federal regulation of use of leased equipment by

authorized interstate carriers). Indemnification of the lessee by the lessor is, however, permissible. The Supreme Court has upheld explicit indemnification agreements in truck leases, noting that "the mere presence of [an indemnification clause] does not, in and of itself, offend the regulations so long as the lessee does not absolve itself from the duties to the public and to shippers imposed upon it by the Commission's regulations." *Transamerican Freight Lines, Inc. v. Brada Miller Freight Systems, Inc.*, 423 U.S. 28, 40, 96 S.Ct. 229, 235, 46 L.Ed.2d 169 (1975). The fact that the lessor also insures the vehicle is irrelevant to the lessee's obligation to meet the financial responsibility requirements of the regulations. The existence of additional insurance funds affects only the ultimate distribution of liability, a subject on which the regulations are indifferent. Indeed, 49 C.F.R. § 1057.12(j) permits the lessee and owner to apportion ultimate liability between themselves by means of additional insurance policies, and cites bobtail insurance as an example. Such arrangements are, however, supplemental to the lessee's obligation to provide coverage at all times the lease is in effect.

■ Despite rejecting Occidental's argument, we agree with the district court's conclusion that Occidental's policy excludes coverage because Dunn was, as a matter of state law, using his truck "in the business of" Lykes at the time of the accident.[6] We note initially that the language of the Truckmen endorsement is unambiguous; "[w]here the terms of a policy are not ambiguous, [Wisconsin] court[s] will simply apply the policy according to its terms without engaging in construction...." *Arkwright–Boston Mfrs. v. Wausau Paper Mills Co.*, 818 F.2d 591, 594 (7th Cir.1987) (citing *Lawver v. Boling*, 71 Wis.2d 408, 421–22, 238 N.W.2d 514, 521 (1976)); *see*

L.Ed. 1477 (1941). The district court applied Wisconsin law in this case in the absence of any suggestion by the parties that any other state's law applies. Wisconsin, however, has adopted the Uniform Judicial Notice of Foreign Law Act, *see* Wis.Stat.Ann. § 902.02, which abolished the requirement of pleading foreign law and authorizes courts to take judicial notice of the law of

other states. Nevertheless, since neither party raises this issue on appeal, we also apply Wisconsin law.

6. We review grants of summary judgment *de novo. Christianson v. Colt Indus. Operating Corp.*, 870 F.2d 1292, 1299 (7th Cir.1989).

*also Wenkosky v. Protective Ins. Co.*, 698 F.Supp. 1227 (M.D.Pa.1988) (holding similar endorsement unambiguous). The fact that contractual language may, on occasion, pose difficult factual applications does not make that language ambiguous. *Wausau Paper Mills*, 818 F.2d at 594. The phrase "in the business of an ... organization to whom the automobile is rented" clearly refers to occasions when the truck is being used to further the commercial interests of the lessee. That was the case here. Dunn had not completed his delivery for Lykes, remained in Fort Wayne at Lykes' command, and was en route to pick up his trailer in order to complete his delivery of the orange juice when the collision occurred. The possibility that Rich's interests coincided with those of Lykes does not diminish the benefits Lykes received from Dunn's actions; Dunn was furthering Lykes' commercial interests at the time of the collision, and Occidental's policy exclusion therefore applies.

Even if we found paragraph (C) of the endorsement ambiguous, the context of the entire exclusion resolves any doubts about its meaning and applicability in this case. The Truckmen endorsement is also called, in the policy, "insurance for non-trucking use." That appellation suggests the scope of the policy coverage: it applies only when the truck is being used for purposes unrelated to trucking. Moreover, the endorsement leaves no doubt that trucking-related business is not confined to periods when the tractor is hauling goods. Paragraph (B) excludes coverage whenever the truck carries property in any business. By implication, then, a truck tractor may be "in the business of" lessees under paragraph (C) of the exclusion even when it is not hauling goods; that is, when it is bobtailing.

Wisconsin has not directly considered the exclusion contained in a Truckmen endorsement. In *Fels v. Indus. Comm'n*, 269 Wis. 294, 69 N.W.2d 225 (1955), however, the Wisconsin Supreme Court held that an independent trucker incurred injuries arising

from the "obligations or conditions" of his work when he injured himself while repairing his truck while under contract to deliver loads of gravel to a construction site. The Wisconsin Court rejected the construction company's claim, echoed in this case by Hartford, that while repairing the truck the owner was furthering his own interests rather than the company's. Although *Fels* was a workman's compensation case, we see no reason the Wisconsin courts would not reject Hartford's claim as well. In both cases, the vehicles were under contract to a lessee to make a delivery; in both cases the lessor was responsible under the lease for repairs to the truck. Before completing their tasks, both lessors arranged for repairs to the vehicle, and while the truck was being repaired, an injury occurred. If the trucker's injuries in *Fels* arose from the "obligations or conditions" of his work for the construction company—the test for applicability of the Wisconsin workman's compensation statute—he was surely engaged "in the business of" the construction company while repairing his truck.

This Court reached a similar conclusion in *Freed v. Travelers*, 300 F.2d 395 (7th Cir.1962).[7] In *Freed*, the Court held that, under the contract in question, the lessee's insurer was obligated to indemnify the lessor's liability resulting from a collision that occurred while the lessor was driving his truck to a garage for repairs. Significantly, the Court held that Freed, the driver, was working for the lessee even though he had completed a delivery; Dunn, on the other hand, had not completed his delivery of the orange juice and remained in Fort Wayne at Lykes' insistence.

Hartford distinguishes *Freed* by arguing that the Court based its holding on the presence of an explicit provision of the contract prohibiting personal use of the insured vehicle by the lessor during the life of the lease. The absence of an identical restriction in the lease between Lykes and Rich Transport does not affect the analysis

---

7. *Freed* was an Illinois case and thus is not, as Occidental suggests, dispositive of this case. Nevertheless, its factual similarity, in the ab-

sence of contrary Wisconsin precedent, makes it persuasive authority.

used by the *Freed* court however. The lease in this case does contain the provision, mandated by 49 C.F.R. § 1057.12(c)(1), that gives Lykes "exclusive possession, control and use of the equipment for the duration of the lease." This provision proscribes personal use of the truck by the lessor just as effectively as did the clause in *Freed*. More importantly, *Freed* did not, as Hartford suggests, turn on the exclusive use provision. The Court merely noted that the presence of such a clause "confirms that the procurement of repairs incident to lessor's duty to hold the tractor 'ready at all times for services of the lessee' is to be regarded as an activity exclusively in the business of the lessee and not a personal use of the tractor [by the lessor].…" 300 F.2d at 398; *see also Carriers Ins. Co. v. Griffie*, 357 F.Supp. 441 (W.D.Pa.1973) (vehicle in business of lessee where accident occurred during pre-trip inspection required by contract).

Rich was under the same duty to hold the truck ready for the services of Lykes. Paragraph 4A of the lease explicitly requires Rich to "[m]aintain[ ] the Equipment in the state of repair required by all applicable regulations.…" Moreover, paragraph 4C also requires Rich to "exercise diligent efforts to assure continuing customer satisfaction." Hartford claims that the freon leak in Dunn's trailer "was not necessary to the continued operation of the carrier's [Lykes'] business," but in light of the fact that the buyer rejected the orange juice because it was too warm and Dunn's admission that he had to refill the freon in the trailer during the trip to Fort Wayne, we cannot make the leap of faith necessary to endorse that conclusion.

### III.

Accordingly, we agree with the district court's conclusion that, as a matter of law, Dunn's tractor was being used in the business of Lykes at the time of the accident and affirm the district court's grant of summary judgment for appellee Occidental Insurance Company.