**LIBERTY MUTUAL INSURANCE COMPANY, Plaintiff–Appellant,**

v.

**CONNECTICUT INDEMNITY COMPANY, Larry Weicht, Elizabeth Grant, and Cynthia Jessup, Defendants–Appellees.**

No. 94–3007.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 13, 1995.

Decided June 7, 1995.

**1334**

Robert T. Keen, Jr. (argued), Diana C. Bauer, Miller, Carson, Boxberger & Murphy, Fort Wayne, IN, for Liberty Mut. Ins. Co.

Leonard E. Eilbacher, Dane L. Tubergen (argued), Hunt, Suedhoff, Borror & Eilbacher, Fort Wayne, IN, for Connecticut Indem. Co.

Larry Weicht, Angola, IN, pro se.

Larry J. Burke, Fort Wayne, IN, for Elizabeth Grant.

John C. Grimm, Grimm & Grimm, Auburn, IN, for Cynthia Jessup.

Before COFFEY and KANNE, Circuit Judges, and MORAN,* District Judge.

KANNE, Circuit Judge.

Larry Weicht is a truck driver who owns and operates his own semi-tractor. Connecticut Indemnity insures Weicht against most "bobtail" accidents, accidents that occur when Weicht drives his semi-tractor with no trailer and is not working for anyone else. We decide in this diversity case whether Connecticut Indemnity's bobtail policy covers an accident Weicht had on the way to resume delivering a trailer for Gra–Bell Truck Line Inc., Liberty Mutual's insured. If we decide that it does, we must decide whether that coverage is primary to Liberty Mutual's coverage.

No facts are disputed, and the existence of Connecticut Indemnity's liability depends solely upon our application of Connecticut Indemnity's insurance policy, a pure question of state law. The district court granted summary judgment in favor of Connecticut Indemnity, and we review the case *de novo*. *Alexander v. Erie Ins. Exchange*, 982 F.2d

1153, 1157 (7th Cir.1993). The parties do not dispute that Indiana law governs this case, so we apply substantive Indiana law. *Id.*

*Background*

Weicht leased his semi-tractor to Gra–Bell, an interstate motor carrier licensed by the Interstate Commerce Commission (ICC) to transport goods by motor carrier over authorized routes. Under the terms of the lease, Weicht operated his semi-tractor as a carrier in interstate commerce under Gra–Bell's ICC authority. Gra–Bell provided Weicht with public liability insurance, property damage insurance, and cargo insurance on the semi-tractor while it was operated by Weicht in the service of Gra–Bell. Liberty Mutual is Gra–Bell's insurer for these purposes. Under the lease terms, Weicht maintains public liability insurance and property damage insurance on the semi-tractor when it is not operated in the service of Gra–Bell. Connecticut Indemnity is Weicht's insurer for these purposes.

One Saturday evening, Gra–Bell dispatched Weicht to Kellogg Company in Battle Creek, Michigan to pick up a load of breakfast cereal. Weicht was to deliver the cereal to Scot–Lad in Lima, Ohio by 5:00 p.m. the following Monday. He picked up the load and left Battle Creek just after 12:00 a.m. Sunday, then drove to a truck stop in Jamestown, Indiana, where he uncoupled the loaded trailer from his semi-tractor and left it at the truck stop. He had permission from the truck stop to leave his trailer there for short periods of time. After uncoupling the trailer, Weicht logged himself off duty and drove his semi-tractor from the truck stop in Jamestown to his home in nearby Angola, Indiana.

It is common practice for Gra–Bell's owner-operators to uncouple their trailers and leave them at various locations in this fashion so that they may spend their weekends at home. The parties do not dispute that Gra–Bell authorized Weicht to do this. Weicht also could have dropped his trailer at the Gra–Bell terminal in Charlotte, Michigan,

* The Honorable James B. Moran, Chief Judge of the Northern District of Illinois, sitting by desig-    nation.

one hour north of his home, or he could have left the trailer attached to the semi-tractor while it was parked at his home.

On Monday, Weicht began the trip from his home in Angola to pick up the loaded trailer in Jamestown so that he could proceed to Lima, Ohio with the cereal. On his way to the truck stop, before logging himself back on duty, Weicht had an accident with a vehicle operated by Elizabeth Grant in which Cynthia Jessup was a passenger. Grant and Jessup each sustained injuries and Grant's vehicle was damaged in the accident.

### The Connecticut Indemnity Policy

Connecticut Indemnity's policy excludes coverage of Weicht's semi-tractor "while used in the business of anyone to whom [it] is rented." Additionally, Connecticut Indemnity certified to Gra–Bell its coverage of Weicht. Its certificate stated that "no coverage is afforded when the described vehicle(s) is (are): 1. Under motor carrier control or dispatch. 2. Used to carry property in any business or in route for such purpose."

Liberty Mutual argues that this certificate, because it contains an exclusion not enumerated in the body of the actual policy, creates an ambiguity in Connecticut Indemnity's policy that requires us to construe the policy against Connecticut Indemnity. *See, e.g., Eli Lilly & Co. v. Home Ins. Co.*, 482 N.E.2d 467, 470–71 (Ind.1985), *cert. denied*, 479 U.S. 1060, 107 S.Ct. 940, 93 L.Ed.2d 990, 991 (1987). However, Connecticut Indemnity does not argue that the policy excludes coverage based on the extra clause in the certificate of insurance. Therefore, we do not consider the extra clause in arriving at our decision.

■ Furthermore, we have held that an endorsement similar to the one in Connecticut Indemnity's policy, one that excluded coverage where the truck was "in the business of" the lessee, was not ambiguous. *Hartford Ins. Co. v. Occidental Fire & Casualty Co.*, 908 F.2d 235, 238–39 (7th Cir.1990). Like-

wise, we conclude that the Connecticut Indemnity policy is not ambiguous; "in the business of" means furthering the commercial interests of the lessee. *Id.* at 239. Therefore, we need not construe the policy in favor of the insured in order to further the policy's basic purpose of indemnity. *Eli Lilly*, 482 N.E.2d at 470–71.

### Analysis

■ The case turns on whether Weicht was operating his semi-trailer in the business of Gra–Bell at the time of the accident. If so, the Connecticut Indemnity policy would not apply. If not, the Connecticut Indemnity policy would apply and we would decide whose coverage is primary.

Liberty Mutual argues that Weicht's off-duty status, combined with the Indiana *respondeat superior* rule that an employee does not act within the scope of his employment while travelling to or from work, should lead us to conclude that the Connecticut Indemnity policy covers the accident.

Before examining Liberty Mutual's argument in-depth, we caution that the Indiana doctrine of *respondeat superior* does not control this case. This case is not about *respondeat superior.* Nor is it about whether Gra–Bell's insurance with Liberty Mutual applies; the parties agree that it does.[1] This case is about whether Weicht's insurance with Connecticut Indemnity applies, and, if so, whether it is primary; it is a case about contract interpretation. The cases that have decided *respondeat superior* questions are persuasive and helpful to the extent they provide clues as to what sorts of activities Indiana courts generally believe to be contemplated by the words "in the business of."

The Indiana law of *respondeat superior* states that an employee normally is not in the service of his employer when he causes an accident while driving to or from work. *Biel, Inc. v. Kirsch*, 240 Ind. 69, 161 N.E.2d 617, 618 (1959). We emphasize *normally* because "this weasel word is definitely re-

---

1. Federal statutes and regulations require Gra–Bell to maintain public liability insurance that covers the leased vehicle for the entire term of the lease. 49 U.S.C. § 10927(a)(1); 49 C.F.R. § 1057.12(j)(1); 49 C.F.R. § 1043.1(a)(1). Federal law also provides that trucking company lessees, such as Gra–Bell, as ICC licensed carriers, assume complete control, use, and responsibility of the trucks they lease. 49 U.S.C. § 11107(a)(4); 49 C.F.R. § 1057.12(c)(1).

quired for the sake of accuracy." *Konradi v. United States,* 919 F.2d 1207, 1209 (7th Cir. 1990). In *Kirsch,* the Indiana Supreme Court found outside the scope of employment an employee who caused an accident with a company car on the way to work. It was important to the court that the employee used the car for personal convenience. *Id.* This same concern guided the Indiana Court of Appeals in *City of Crawfordsville v. Michael,* 479 N.E.2d 102 (Ind.Ct.App.1985), *trans. denied,* 487 N.E.2d 159 (Ind.1986), *abrogated on other grounds by McCarty v. Hospital Corp. of Am.,* 580 N.E.2d 228, 231 (Ind.1991). There the employer was not liable because the employee caused the accident using the company truck while on personal business.

Liberty Mutual applies the *respondeat superior* analogy to the context of bobtail insurance through the case of *Empire Fire & Marine Ins. Co. v. Midwestern Indemnity Co.,* 402 N.E.2d 998 (Ind.Ct.App.1980), which held that a trucker returning home from his delivery was not in the service of the company to whom he leased his truck and his services.[2] Liberty Mutual also cites *Pace v. Couture,* 150 Ind.App. 220, 276 N.E.2d 213 (1971), in which the Indiana Court of Appeals found that a trucker was not in the business of his trucking company where he had dropped off a load, was told that there was nothing else to deliver, and then caused an accident while bobtailing home. The *Pace* court noted that the trucking company had no control over or interest in the driver's direction of travel or personal activities when the accident occurred.[3]

Based on these cases, Liberty Mutual argues that what matters is the nature of Weicht's activity—travelling from his home to the truck stop to begin his employment. Weicht was not hauling any freight at the time of the accident, nor had he logged himself on duty, so he was not yet in the business or service of Gra–Bell, Liberty Mutual contends. Moreover, Weicht was under no obligation to Gra–Bell to drive his truck to and from his home, so he merely acted out of personal convenience when he did, and he is no different in this respect than a factory worker who must travel in his personal automobile to and from the factory. Weicht could have left the entire rig at the truck stop, or at the Gra–Bell terminal in Charlotte, Michigan, and travelled to and from his home by personal automobile. If he had done so, Liberty Mutual maintains, there would be no argument that he was acting in the service of Gra–Bell. That he used the semi-tractor should be of no significance, then, because Weicht's activity, not his equipment, dictates whether Connecticut Indemnity's policy excluded coverage.[4] Liberty Mutual propounds that going home is going home, and returning to work is returning to work, and that, no matter when or how one does it, going home exhibits a degree of personal convenience that removes one from the business of another.

Connecticut Indemnity responds that, as long as Weicht acted under Gra–Bell's dispatch orders and the authority of his lease with Gra–Bell, he was acting in Gra–Bell's business. The dispatch orders continued from the time Weicht picked up the trailer in Battle Creek until he dropped off the cereal in Lima. The lease reserved the right to control the manner, means, and details of

---

**2.** *See also McLean Trucking Co. v. Occidental Fire & Casualty Co. of N.C.,* 72 N.C.App. 285, 324 S.E.2d 633 (1985), where the North Carolina Court of Appeals held that a trucker returning home from his lessee company's terminal after completing a delivery was not in the service of the company.

**3.** *See also Acceptance Ins. Co. v. Canter,* 927 F.2d 1026, 1028 (8th Cir.1991), for the proposition that a trucker driving home from his company's premises with no load to deliver was not in the business of the trucking company. The court in *Acceptance* noted in particular that "When [the truck driver] left Britton's St. Paul terminal, he did not depart with any instructions to proceed to a particular destination ... he was off duty and free to spend the weekend as he wished." *Id.* at 1028.

**4.** It is true that what equipment Weicht used will not in itself answer all questions regarding Connecticut Indemnity's coverage, but it is not irrelevant. If Weicht had used his own car to travel to and from the truck stop and Connecticut Indemnity insured his car the same way it insures his semi-tractor, Connecticut Indemnity's argument that he was in the business of Gra–Bell would have the same force. To the extent that the insurance policy at issue covered only Weicht's semi-tractor and not his car, then, it does matter that Weicht was driving his semi-tractor.

Weicht's deliveries, but Gra–Bell by policy and custom authorized him to use whatever reasonable route he saw fit, including stopping at home for the weekend, to transport the cereal to Lima. Weicht stayed at home that weekend, but that is only by the good graces of Gra–Bell, who apparently could have ordered him, for example, to drive the entire distance to Lima without stopping. Connecticut Indemnity recognizes the limits of Weicht's freedom under the lease: had Weicht driven his semi-tractor to the Indianapolis Motor Speedway or to the Kentucky Derby that weekend, for example, Weicht would have exceeded his authority under the lease and would not have been acting in the business of Gra–Bell. Uncoupling the trailer and stopping at home for the weekend, however, was within his authority.

We find support for Connecticut Indemnity's argument in Indiana case law. In *Gibbs v. Miller,* 152 Ind.App. 326, 283 N.E.2d 592, 594 (1972), the Indiana Court of Appeals upheld a jury verdict that found an employer liable for an accident its travelling salesman caused when, using his own car, he was driving home for lunch after making sales calls during his day off and planned more sales calls in the afternoon. The court stated that "[t]he general test in determining the existence of a master-servant relationship is the right to direct and control the conduct of the alleged servant at the time the negligent act occurred." *Id.* 283 N.E.2d at 594–95. Moreover, the court emphasized that the test refers only to the *right* to control, not actual control, especially where the work does not require a great deal of supervision. *Id.* at 595. One factor the court cited in affirming the jury's finding was that the employee was exercising the discretion his employer allowed him in choosing his routes at the time of the accident. *Id.* at 595.

In *State v. Gibbs,* 166 Ind.App. 387, 336 N.E.2d 703 (1975), the Indiana Court of Appeals upheld a jury verdict that found an employee was in the service of his employer where the employer furnished him with a car and allowed him to take it home at night and the accident occurred on the employee's way home from work. The court noted that the driver effectively was on call twenty-four hours, that he had used the car to try to locate his supervisor shortly before the accident, and that he was driving his customary and most direct route home. *Id.* 336 N.E.2d at 705–06. The court recognized that Indiana cases found servants to be in the scope of employment where their "conduct was motivated to any appreciable extent by the purpose to serve the master." *Id.* at 705.

Furthermore, in the bobtail trucking context, we discern that it made a difference to the courts in *Empire Fire* and *Pace* (where the Indiana Court of Appeals found the truck drivers not in the business of their trucking companies) that the truckers either had completed their deliveries or were not assigned any deliveries when their accidents occurred. They went home because there was nothing else to do and the companies to whom they leased their trucks and services instructed them only to call later to see if there were any deliveries to be made. They were under no instructions, control, or authority from their lessee companies with regard to any specific delivery and they had no responsibility for any property. *See Empire Fire,* 402 N.E.2d at 1000; *Pace,* 276 N.E.2d at 215–16.

Here, Weicht was under instructions from Gra–Bell regarding a specific delivery and was responsible to Gra–Bell and Kellogg for the cereal. Gra–Bell, though it could have required Weicht to follow a specific route, to stop at a specific terminal, or to stay at a specific motel while on his delivery, chose to let Weicht determine the best route for his delivery and authorized him to stop at home and rest, so long as he delivered the cereal by 5:00 p.m. Monday. It was not as though Weicht had the freedom to drive his semi-tractor hither and yon in search of other fulfillment. At the time of the accident, Weicht was directly on his way to pick up the trailer, apparently using a normal route for that purpose, which is reminiscent of *Gibbs,* 336 N.E.2d at 705–06.[5] We believe that Indiana courts would, under these facts, find that Weicht was acting in the business of Gra–Bell at the time of the accident.

In a similar case interpreting Wisconsin law, we found a trucking company's ultimate

5. We observe that *Konradi v. United States,* 919 F.2d 1207, 1212–13 (7th Cir.1990), identified three factors for courts to consider under the Indiana law of *respondeat superior* in deciding

authority over the delivery to be persuasive. *Hartford Ins. Co. of the Southeast v. Occidental Fire & Casualty Co. of N.C.*, 908 F.2d 235 (7th Cir.1990). There, a trucker dropped off his refrigeration trailer for repairs after a buyer rejected the melted orange juice concentrate he attempted to deliver. The trucker then bobtailed to a truck stop to await the completion of the repairs. On his way back to pick up the repaired trailer, the trucker rear-ended a car. We held that, because the trucker had not completed his delivery and remained under the lessee company's operational control, the trucker was acting in the service of the lessee company at the time of the accident. *Id.* at 239. The truck owner's interest in fixing the truck may have coincided with the interests of the lessee company, but that coincidence did not diminish the lessee company's control and authority. *Id.*

Note, moreover, that in *Hartford Insurance* no one apparently directed the driver to go to the truck stop and rest during the time that the trailer was being repaired. The trucker went to the truck stop for his own pleasure and convenience. His situation would have been no different if he had been fortunate enough to live in the town where his truck was being repaired and had gone home instead.[6] What matters is that, when the accident occurred he was in the middle of carrying out his dispatch orders, the company to whom he leased his services had the right to control his actions, and he was responsible for the orange juice. Here we interpret Indiana law, and the *Hartford Insurance* analogy becomes very persuasive in light of our finding that Indiana courts would likely find Weicht in the business of Gra–Bell. Weicht's idle time wasn't paid, but he still owed responsibility to Gra–Bell (and Kellogg) for the cereal. Gra–Bell could have directed Weicht to care for the cereal in a specific way, but it chose to let him use his reasonable judgment within customary parameters, which he did. Such leeway does not eviscerate Gra–Bell's ultimate responsibility and control, nor does it remove Weicht from the business and service of Gra–Bell. Because we find that Connecticut Indemnity's policy did not cover Weicht in this accident, we do not decide whether its policy affords coverage primary to Liberty Mutual's policy.

AFFIRMED.

whether a worker was in the business of his employer when driving to and from work: 1) whether the worker conferred a *benefit* on the employer by driving; 2) whether the employer exerted substantial *control* over the employee's commuting; and 3) whether the employee was in the *service* of the employer while commuting. *Konradi*'s factors are self-admittedly not conclusive "tests," 919 F.2d at 1213, but they do reflect considerations Indiana courts have found important. Although we focus on the control factor, we note that analysis under the service and benefits factors also supports our conclusion. At the time of the accident Weicht was in the midst of his mission for Gra–Bell; he was on his way to pick up the trailer so he could complete his delivery. The fact that Gra–Bell offered him the option of interrupting his journey and spending the night at home, rather than taking his load straight to Lima, does not alter the fact that when he struck Grant and Jessup he was acting in the service and for the benefit of Gra–Bell— after all, he had to sleep somewhere. *See Gibbs v. Miller*, 152 Ind.App. 326, 283 N.E.2d 592, 595 (1972) (salesman who was involved in an accident while driving home for lunch, between appointments at customers' homes, was acting within the scope of his employment; salesman's activity was "actuated to an appreciable extent by the purpose to serve the master"); *Hartford Ins. Co. of the Southeast v. Occidental Fire & Casualty Co. of N.C.*, 908 F.2d 235, 239 (7th Cir.1990) (trucker who interrupted his journey to go to a truck stop while repairs were being made to his employer's trailer was acting within the scope of his employment when he collided with another vehicle on the way back to the repair shop. Trucker was furthering employer's interest when accident occurred).

6. In an important exchange of views during oral argument, Liberty Mutual admitted that Weicht would have remained in the business of Gra–Bell had he not lived nearby and had therefore stayed in a motel in Angola. But Liberty Mutual continued that Weicht would not have been in the business of Gra–Bell had he stayed at a motel because he was estranged from his wife. It's all a matter of personal convenience, says Liberty Mutual. Yet Weicht's sense of personal convenience is not the end of the inquiry about his activity. We must also inquire whether at the time of the accident Weicht owed responsibility to the company for any particular business, whether he was acting within his agreement with the company, and whether the company could have controlled his actions.