United States Court of Appeals,

Fifth Circuit.

No. 94-20404.

ASSICURAZIONI GENERALI, S.P.A., Plaintiff-Appellee,

v.

RANGER INSURANCE CO., et al., Defendants,

Ranger Insurance Co., ETL Corp., and Empire Truck Lines, Inc., Defendants-Appellants.

Sept. 21, 1995.

Appeal from the United States District Court for the Southern District of Texas.

Before WISDOM, DUHÉ and BENAVIDES, Circuit Judges.

BENAVIDES, Circuit Judge:

The central issue of this appeal involves the interpretation of an exclusion attached to a "non-trucking" insurance policy. The case stems from a motor vehicle collision. A dispute arose regarding coverage between the insurance carrier for the truck owner and the insurance carrier for the lessee of the truck. Determining that the language of the exclusion in the owner's policy is ambiguous, we find that the truck owner's insurance policy provided coverage. We therefore reverse.

## I. FACTS AND PROCEDURAL HISTORY

Lillie Hooker owned the truck involved in the accident, a 1978 Peterbuilt Tractor. She leased the truck to ETL Corporation, who then leased it to a related company, Empire Trucking Lines. The lease agreements were in effect on the date in question. Pursuant to the lease agreement, Hooker was responsible for carrying

insurance on the truck covering accidents occurring when the truck was operating "not under dispatch to Empire." Appellee Assicurazioni Generali S.p.A. (Generali) provided "non-trucking" insurance to Hooker, and Appellant Ranger Insurance Company (Ranger) provided commercial auto insurance to Empire. Both policies were in effect on the date of the accident.

Hooker's son, Jeffrey Mitchell, was Hooker's designated driver on February 4, 1992. On that date, Mitchell stated that he was having problems with the brakes. He declined to be dispatched and was not transporting property. The dispatcher for Empire understood that after Mitchell declined to be dispatched, Mitchell took the truck out of service. Empire, however, did not mark the truck out of service. He was "bobtailing"[1] in route to the repair shop when the accident occurred. Kelley Barnes and Derrick Bundage were injured in the accident. Barnes and Bundage filed a state court action against Hooker. Thereafter, Generali filed this action, requesting that the district court enter a declaratory judgment that Generali does not provide coverage to Hooker, Mitchell, Empire, or ETL for the claims arising from the vehicular collision. Generali also requested that the district court enter a judgment declaring that Ranger did provide coverage for the accident. Ranger counterclaimed, requesting the district court to enter a declaratory judgment that Generali provided primary coverage to ETL, Empire, Hooker, and Mitchell. The district court

---

[1]"Bobtailing" means driving a tractor without a trailer attached.

2

entered a declaratory judgment that Ranger provided primary coverage and that the endorsements attached to Generali's policy excluded coverage. Ranger appeals.

## II. STANDARD OF REVIEW

This is an appeal from a declaratory judgment, and we have jurisdiction based on the diversity of citizenship. We therefore apply Texas law. *Ranger Ins. Co. v. Estate of Mijne,* 991 F.2d 240, 243 n. 9 (5th Cir.1993). Texas courts construe insurance policies like contracts. *National Union Fire Ins. Co. v. Hudson Energy Co.,* 811 S.W.2d 552, 555 (Tex.1991). The interpretation of a contract is a question of law, and thus, we review it *de novo. D.E.W., Inc. v. Local 93, Laborers' International Union of N. Am.,* 957 F.2d 196, 199 (5th Cir.1992).

## III. WHETHER THE EXCLUSIONS APPLY

Ranger contends that the magistrate judge erred in finding that the "in the business of" endorsements attached to Generali's policy excluded coverage for the accident, arguing that, at the time of the accident, the truck was not engaged in the business of transporting property, and, thus, the exclusions in Generali's policy did not apply. The endorsements at issue provided as follows:

> INSURANCE FOR NON-TRUCKING USE (LIMITED)
> (BOBTAIL/DEADHEAD)
>
> \* \* \* \* \* \*
>
> WE agree with you that such insurance as is afforded by the policy for Bodily Injury, Property Damage, Uninsured Motorist Coverage and/or Personal Injury Protection does not apply:

3

(a) To any person or organization or any agent or employee thereof, other than YOU,[2] engaged in the business of transporting property by auto for others;

(b) While the auto is being used to carry property in any business;

(c) While a trailer, semi-trailers, or another truck or tractor unit, whether owned or non-owned, is attached to any truck or tractor described above.

(emphasis in original) (footnote added).

In support of its contention that the truck was not "engaged in the business of transporting property"[3] at the time of the accident, Ranger relies on the following stipulated facts: Mitchell was in route to repair the tractor's brakes; Mitchell was not transporting property; Mitchell was not under dispatch; Mitchell was bobtailing and had taken the tractor out of service.

Although the court below acknowledged the preceding facts, it found that, as a matter of Texas law, Mitchell was engaged in the business of transporting property for Empire at the time of the accident, citing *Greyhound Van Lines, Inc. v. Bellamy,* 502 S.W.2d 586 (Tex.App.—Waco 1973); *Rainbow Express, Inc. v. Unkenholz,* 780 S.W.2d 427 (Tex.App.—Texarkana 1989, writ denied).[4]

---

[2]For purposes of this appeal, we do not decide whether "YOU" includes Mitchell.

[3]*See* endorsement section (a).

[4]The district court also relied on *Hartford Ins. Co. v. Occidental Fire & Cas. Co.,* 908 F.2d 235, 238 (7th Cir.1990), in which the Seventh Circuit, construing Wisconsin law, determined that the driver was using his truck "in the business of" the lessee while having the trailer repaired. While the opinion in *Hartford* contains language arguably indicating that any time that a vehicle is being repaired it is in the business of the lessee, it is distinguishable from the instant case on its facts. In that case, the truck was carrying refrigerated cargo in a trailer

4

In *Greyhound,* the plaintiff sued the lessee of the truck, Greyhound, for personal injuries caused by the negligence of the truck driver. 502 S.W.2d at 587. The jury found that the truck driver negligently injured the plaintiff while attempting to assist the plaintiff, a mechanic, repair the brakes. Greyhound's defense was that the driver was not its employee, but instead was an employee of the owner of the truck or an independent contractor.

Rejecting Greyhound's defense, the Texas court of appeals explained that "Article 6701c-1, Vernon's Texas Civil Statutes, prohibits the lessee of a commercial motor vehicle or truck-tractor

that leaked freon. The buyer rejected the cargo. The truck lessee instructed the driver to unload the cargo into cold storage and await further instructions because the lessee needed that truck to carry the cargo. In the interim, the driver left his trailer to be repaired. The truck, while bobtailing, was involved in an accident returning to the repair shop. The Seventh Circuit held that the truck was operating in the business of the truck lessee at the time of the accident. 908 F.2d at 238. In the instant case, the driver had declined dispatch because he needed to have his truck's brakes repaired and was not supervising any cargo.

Recently, in *Liberty Mutual Insurance Co. v. Connecticut Indem. Co.,* 55 F.3d 1333, 1338 (7th Cir.1995), the Seventh Circuit, applying *Indiana* law, determined that the endorsement in the truck driver's indemnity policy applied to exclude coverage because the truck driver, who owned the truck, was "in the business of" the truck lessee at the time of the accident. *Liberty,* however, can be distinguished from the instant case for the same reasons as *Hartford, supra.* In *Liberty,* the truck driver was responsible for cargo left at a truck stop and under orders to deliver the cargo. The *Liberty* court, relying on *Hartford,* emphasized that the inquiry depends on: whether the accident occurred while the truck driver was under dispatch orders; whether the lessee could control his actions; and whether the driver was responsible for the cargo. *Liberty,* like *Hartford,* is distinguishable from the case at bar because Mitchell was not under dispatch and was not responsible for any cargo.

5

from operating such vehicle over the public highways of this state unless the lease provides that the lessee shall have "full and complete control and supervision' over the operation of the vehicle." *Id.* at 588.[5] Additionally, the Court stated that, in accordance with the leases's provisions, the owner furnished the driver with the truck subject to Greyhound's approval. Under those circumstances, the Court held that Greyhound's claim that its right to exclusive control of the truck did not include the right of supervision of the driver's undertaking to repair the truck was unpersuasive. *Id.*

The Court further opined that "article 6701c-1 was obviously enacted to eliminate any uncertainty that might otherwise exist as to who is responsible for wrongs inflicted upon the public at large through the operation on our state highways by lessees of the vehicles named in the statute." *Id.* Notwithstanding any other rule, the Court found that Greyhound was prohibited from claiming that the driver was not under its exclusive control and supervision at the time the plaintiff was injured. *Id.* The overriding force behind the decision in *Greyhound* was to give effect to the public policy embodied in article 6701c-1, *i.e.,* to make certain that a member of the public injured by such a leased vehicle would have certainty in determining who is held responsible.

In *Rainbow, supra,* a tire on the truck leased to Rainbow blew

_____

[5]Although Greyhound's lease contained the language in article 6701c-1, the Court stated that if the clause had not been in the lease, it "would have been a part of their lease contract as a matter of law." *Greyhound,* 502 S.W.2d at 588.

6

out, causing the driver to lose control of the truck and strike the plaintiff's vehicle. 780 S.W.2d at 429. The truck was hauling goods to Illinois at the time of the accident. Joe Dixon owned the truck, and, pursuant to the lease to Rainbow, Dixon was to maintain the trucks. There was testimony that Dixon instructed the trucker to drive to Illinois without purchasing new tires. The jury found Dixon negligent, a finding that was not appealed. The Court stated that "the duty of maintenance and repair is a nondelegable function that is required to be under the control of the lessee." 780 S.W.2d at 432 (citing, *inter alia, Greyhound* ). The Court then reasoned that because Dixon was performing the nondelegable duty of keeping the truck properly maintained, he was a vice-principal of Rainbow, the lessee, as a matter of law. *Id.*

Neither *Greyhound* nor *Rainbow* are controlling in that they do not dispose of the issue at bar—whether the language "engaged in the business of transporting property" clearly and unambiguously excludes the repair of the truck in the context of an endorsement to an insurance policy. Both cases are distinguishable in that they involve the liability of the lessee. The *Greyhound* court, looking to the lease provisions and article 6701c-1, held that the lessee's right to exclusive control of the truck included the supervision of the driver's repair of the truck, and, thus, the court found the lessee liable for the driver's negligent acts under the doctrine of *respondeat superior.* Similarly, the *Rainbow* court held that because the owner of the truck was performing the lessee's nondelegable duty of maintaining the truck, he was a

7

vice-principal of the lessee, and, thus, the lessee was liable.  In both of the above Texas cases, the courts were mindful of the important policy of protecting an injured member of the public in accordance with article 6701c-1.

Neither party has cited (nor has our research revealed) a Texas case involving a coverage dispute between two insurers in which the court has defined the scope of an endorsement that excludes coverage when a truck is engaged in the business of transporting property.  The issue presented in this case is not whether there is *any* insurance coverage of the accident.  Instead, the issue is whether the lessor's policy provides coverage additional to that of the lessee's policy.  Specifically, Ranger, the insurer for the lessee, does not contest its coverage of the accident but contends that Generali's policy *also* provides coverage.  The court below relied on cases that involved an important public policy that is not present in the case at bar.

Analogously, in *Industrial Indemnity Company v. Truax Truck Line, Inc.,* 45 F.3d 986 (5th Cir.1995), a Mississippi case involving a coverage dispute over a trucking accident between two insurers, the district court found that one insurer provided coverage based in part on the fact that certain federal regulations required the lessee to have exclusive use of the truck.  We found that the district court erred in looking to the effect of the federal regulations on the risk allocation between insurers, because the policy behind the federal regulations (protecting injured members of the public) had no application to coverage

8

disputes among insurers. *Id.* at 991-92 & n. 7 (citing *Canal Insurance Co. v. First General Insurance Co.,* 889 F.2d 604 (5th Cir.1989)); *see also Hartford Ins. Co. v. Occidental Fire & Cas. Co.,* 908 F.2d 235 238 (7th Cir.1990) ("The existence of additional insurance funds affects only the ultimate distribution of liability, a subject on which the regulations are indifferent.").

If a provision in an insurance policy is subject to more than one reasonable interpretation, such uncertainty should be resolved against the drafter of the policy. *Barnett v. Aetna Life Insurance Company,* 723 S.W.2d 663, 666 (Tex.1987). "An intent to exclude coverage must be expressed in clear and unambiguous terms." *State Farm Fire & Cas. Co. v. Reed,* 873 S.W.2d 698, 699 (Tex.1993).

At the time of the accident, Mitchell was neither under dispatch nor transporting property. He was bobtailing and in route to a repair shop to have the brakes repaired. Further, Empire's dispatcher understood that Mitchell had taken Hooker's truck out of service. We find that, under those circumstances, Ranger's assertion that the truck was *not* engaged in the business of transporting property a reasonable interpretation of the exclusion provision. We also find reasonable Generali's interpretation that activities undertaken to enable the repair of the brakes constitutes engaging in the business of transporting property because it furthers the commercial interests of the lessee. Accordingly, because we conclude that the "in the business of" endorsement is vague and subject to more than one reasonable interpretation, we resolve the doubt against the drafter and find

that the exclusion does not apply.  We find that the district court erred in finding that Generali's policy did not provide coverage for the accident.

## IV. PRIMARY VERSUS EXCESS COVERAGE

Finally, the district court found Ranger's coverage primary because Ranger's policy provided "that its coverage is "primary for any covered auto while hired or borrowed by [Empire] and used exclusively in [Empire's] business.' "  Ranger does not specifically challenge the basis for that holding.  We therefore will not disturb the court's holding that Ranger's policy provided primary coverage.  Nonetheless, Ranger contends that Generali's policy provides primary coverage because the insured, Hooker, owned the truck.[6]  We agree.  The Generali policy expressly provides that "[f]or any covered "auto' you own, this policy provides primary insurance."  Accordingly, we hold that both Ranger and Generali provide primary coverage of the accident.  In the court below, the parties stipulated as follows:

> The parties agree that if the Court finds that the Generali policy was triggered, and that both the Ranger policy and the Generali policy provide primary coverage for the incident in question, the responsibility for coverage shall be shared on a pro rata basis between Ranger and Generali, based on the amount of coverage provided for under each policy.  In effect, Ranger would bear two-thirds (2/3) of the proven loss, and Generali would bear one-third (1/3) of the proven loss.

In accordance with the above stipulation, we find that the Ranger policy covers two-thirds of the proven loss, and the Generali policy covers one-third of the proven loss.

---

[6]It is undisputed that Hooker owned the truck.

10

For the reasons expressed herein, the judgment of the district court is REVERSED and RENDERED against Generali in accordance with this opinion.