OPINION
The following appeal arises from the decision of the Mahoning County Court of Common Pleas granting DeBartolo Realty Corp., et al.'s cross motion for summary judgment and denying Carlo Agonsinelli, et al.'s motion for summary judgment. For the reasons set forth below, the decision of the trial court is reversed and this matter is remanded for further proceedings consistent with this court's opinion.
 I. FACTS
This matter emanates from a stock incentive plan ("the plan") initially created by DeBartolo Realty Corp. ("DeBartolo") in 1994 I for the benefit of certain key employees. In an attempt to reward I and retain certain employees as well as to attract additional employees who would prove to be "an asset to the corporation, DeBartolo formulated a plan which would award said employees the right to receive a specified number of shares of the company's common stock. The plan was to be administered by the Compensation Committee of the corporation's Board of Directors.
While key employees were awarded a certain number of shares of stock by the Compensation Committee, they were not entitled to actual possession of the shares unless DeBartolo met certain annual "funds from operations" goals. In the event DeBartolo met an annual goal, each employee would be entitled to receive a predetermined percentage of his or her original award of shares. Once the employee received the percentage of shares, a three year I vesting period then operated to further delay unrestricted possession. In the event an annual goal was not met by DeBartolo, the percentage of shares delegated under the original award could be earned in a subsequent year if cumulative goals were reached. In the plan's initial year of operation, DeBartolo realized its performance goal. As such, all participants earned 10% of the stock available under the initial award. The established goal was not met in 1995 however, so no stock was earned by participants in that year from their initial awards.
In 1996, DeBartolo entered into an Agreement and Plan of Merger with Simon Property Group. (DeBartolo and Simon Property Group will be referred to collectively as "appellees"). A formal change of control occurred in August of 1996. As a result of this change in control, Carlo Agonsinelli along with a number of additional employees (collectively referred to as "appellants") through their legal representatives requested that appellees deliver all shares and dividends to which they were entitled under the plan. Appellants argued that pursuant to certain provisions of the plan, each employees' entire original grant of stock was to immediately vest upon a change in control of the corporation. The end result of such would be that appellees would be required to deliver a total of 600,000 shares of common stock to appellants which had a value of approximately $18 million.
Appellees refused to deliver the shares of stock which had been originally allocated to appellants. It was appellees' position that the plan only called for accelerated vesting of those shares which had actually been earned by appellants as a result of obtaining annual financial goals. Therefore, appellees asserted that appellants were entitled to 10% of the shares awarded subsequent to meeting the 1994 goal.
Due to the degree of disparity between the parties' positions, appellants filed a complaint in the Mahoning County Court of Common Pleas on October 16, 1996. Appellants alleged claims of breach of contract and breach of the covenant of good faith and fair dealing due to appellees failure to deliver all shares originally allocated to each employee. Appellees subsequently filed an answer as well as counterclaims against a number of employees responsible for bringing the present action. On April 22, 1997 appellants filed a motion for summary judgment. Appellants argued that no genuine issue of material fact existed and the trial court could determine the case as a matter of law. Appellees responded with a cross motion for summary judgment on August 19, 1997. It was agreed that the trial court could decide the case as a matter of law.
In its decision on October 31, 1997, the trial court granted appellees' cross motion for summary judgment while denying appellants' motion. The trial court adopted appellees' position that appellants were only entitled to the accelerated vesting of the shares received as a result of meeting the 1994 financial goals. It was further stated by the trial court that as a result of granting appellees' cross motion for summary judgment, the counterclaims alleged by appellees had been rendered moot. It is from this order that appellants filed a timely notice of appeal on November 7, 1997.
 II. ASSIGNMENT OF ERROR
Appellants do not specifically delineate an assignment of error for this court's review. However, it is clear that the issue presented to this court is whether the trial court erred in granting summary judgment in favor of appellees. Essentially, the parties raise similar arguments to those posed in their summary judgment motions. Appellants assert that based upon the language contained in the stock incentive plan, they were entitled to accelerated vesting of all shares originally allocated regardless of whether they had been earned through the obtaining of annual financial goals. It is appellants' opinion that the trial court misconstrued the language of the plan thereby arriving at an erroneous conclusion.
Appellees counter this position by arguing that the trial court rendered the proper judgment in finding that appellants were entitled only to the vesting of those shares actually earned. Since appellees had only reached the financial goals established for 1994, appellees contend that the plan provisions only provide for the immediate vesting of the 10% of stock actually earned by appellants. Appellees point to various documents in addition to the plan itself in an attempt to solidify their position. It is argued that the plan acted only as an enabling document for the stock incentive awards and it is therefore necessary to look to extrinsic evidence for an explanation of the plan terms.
 A. STANDARD OF REVIEW
In considering a motion for summary judgment, Civ.R. 56 (C) controls and provides that before such a motion may be granted, it must be determined that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. State exrel. Parsons v. Fleming (1994), 68 Ohio St.3d 509, 511. Additionally, the party moving for summary judgment has the responsibility of clearly showing an entitlement to the granting of its motion:
 [A] party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of' the basis for its motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s)of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56 (C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56 (E) to set forth specific facts showing that there is a genuine issue for trial and; if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." Dresher v. Burt (1996), 75 Ohio St.3d 280, 293.
Due to the fact that summary judgment is designed to cut short the litigation process, trial courts should award such with caution, resolving doubts and construing evidence in favor of the nonmoving party. Murphy v. Reynoldsburg (1992), 65 Ohio St.3d 356,360. In that a grant of summary judgment disposes of a case as a matter of law, this court's analysis on appeal is conducted under a de novo standard of review. Grafton v. Ohio Edison Co.
(1996), 77 Ohio St.3d 102, 105.
 B. APPLICABLE LAW
The cardinal purpose of judicial examination of any written instrument is to ascertain and give effect to the intent of the parties to said instrument. Foster Wheeler Enviresponse, Inc. v.Franklin Cty. Convention Facilities Auth. (1997), 78 Ohio St.3d 353,361, citing Aultman Hosp. Assn. v. Community Mut. Ins. Co.
(1989), 46 Ohio St.3d 51, 53. "The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement." Id. citing Kelly v. Medical Life Ins.Co. (1987), 31 Ohio St.3d 130, 132. During the course of the judicial examination of a contract, the reviewing court should give the language of the instrument its plain and ordinary meaning unless some other meaning is evidenced within the document. Alexander v. Buckeye Pipe Line Co. (1978), 53 Ohio St.2d 241,245. In so doing, if the terms of the contract are determined to be clear and unambiguous, the interpretation of the language is a question of law reviewed de novo on appeal.Parsons, supra. Finally, a contract is to be construed against the party who drafted it. Graham v. Drydock Coal Co. (1996),76 Ohio St.3d 311, 314.
Only in the event that a term of a contract is determined to be ambiguous will the matter be labeled as a question of fact. Inland Refuse Transfer Co. v. Browning-Ferris Industries of Ohio (1984), 15 Ohio St.3d 321, 322. A contract or its terms will only be viewed as ambiguous in the event that the rights and duties imposed upon the parties thereto are reasonably subject to conflicting interpretations. The fact that the contractual language "may, on occasion, pose difficult factual applications does not make that language ambiguous." Santana v. Auto OwnersIns. Co. (1993), 91 Ohio App.3d 490, 494 citing Hartford Ins. Co.v. Occidental Fire Cas. Co. (C.A. 7, 1990), 908 F.2d 235. Similarly, the Ohio Supreme Court has held:
 "It is not the responsibility or function of this court to rewrite the parties' contract in order to provide for a more equitable result. A contract `does not become ambiguous by reason of the fact that in its operation it will work a hardship upon one of the parties thereto." Foster Wheeler Enviresponse, Inc., supra at 362 citing Ohio Crane Co. v. Hicks (1924), 110 Ohio St. 168, 172.
 C. ANALYSIS
At issue before the trial court and this court is the effect a merger has on appellants' rights to shares of stock under the plan. The relevant language relating to the ramifications of a change in control of DeBartolo are set forth in section 7 of the plan as follows:
 "(a) Impact of event. Notwithstanding any other provision of the Plan to the contrary, in the event of a Change in Control:
* * *
 (ii) Any Deferred Stock Awards outstanding shall vest and certificates for shares of Common Stock shall be issued to participants in a number equal to the shares covered by each such participant's Deferred Stock Award."
While it is uncontested that a change of control occurred upon the merging of DeBartolo and Simon in August of 1996, the parties are in disagreement as to the impact of section 7 of the plan as related to appellants' rights. As such, this court will begin by examining the section and interpreting the language therein. Since certain terms utilized in section 7 are defined elsewhere in the plan, this court will adopt those definitions rather than apply the ordinary meaning of the terms. Alexander, supra. Pursuant to section 1 of the plan, "Award" and "Deferred Stock" are defined as follows:
"`Award' means a Stock Option or Deferred Stock.
* * *
 "`Deferred Stock' means an award granted under Section 6."
Under section 6 of the plan, entitled "Deferred Stock," various provisions are outlined regarding the administration process for granting awards of Deferred Stock. The section discusses the Compensation Committee's ability to determine which employees are entitled to awards, the times at which said individuals will be granted awards and the number of shares included in the awards. Further administrative issues as related to the Compensation Committee's duties are also discussed therein. Additionally, certain terms and conditions are itemized which the Compensation Committee in its discretion may choose to impose upon the Deferred Stock Awards.
As appellants points out in their brief and as is supported byBlack's Law Dictionary (6 Ed.Rev. 1991) 762, "outstanding," in its plain and ordinary sense, refers to something which is unpaid. Furthermore, the Ohio Supreme Court has defined as notwithstanding as meaning "without prevention or obstruction from or by; in spite of." State ex rel. PIA PsychiatricHospitals. Inc. v. Ohio Certificate of Need Rev. Bd. (1991),60 Ohio St.3d 11, 17 citing State ex rel. Carmean v. Board of Edn.of Hardin Cty. (1960), 170 Ohio St. 415, 422. In light of the availability of clear and unambiguous definitions for all relevant terms of section 7, this court is permitted to proceed with its judicial examination of the plan on a de novo basis.Parsons, supra.
While the Compensation Committee is afforded various duties as a result of numerous provisions contained within the plan, section 7 clearly supersedes any authority granted to the Committee. As related to the consequences of a change in control of the DeBartolo Corp., section 7 indicates that the provisions therein shall apply "[n]otwithstanding any other provision of the plan to the contrary." As the Ohio Supreme Court indicated, it follows that the dictates of section 7 apply without prevention or obstruction from or by any other part of the plan. As to the issue of appellants' rights to Deferred Stock Awards in the event of a change in control of the company, section 7 wins out over all else within the plan. Therefore, we can now turn to analyzing what the terms of this section of the Plan provide in light of the definitions discussed above.
Pursuant to section 7 (a) (ii), appellants would be entitled to the immediate vesting of any shares covered by each participant's Deferred Stock Awards which were outstanding at the time of the change in control. As previously discussed, an outstanding Deferred Stock Award would be one which had not yet been paid at the time of the merger. The Deferred Stock Award which is discussed refers to the amount of stock which the Compensation Committee chose to award to each individual. While the Compensation Committee had the discretion to determine who would receive an award and how many shares each individual would be granted, once the award was made section 7 controlled as to vesting pursuant to a change in control.
Noticeably absent from section 7 (a) is any mention of the term earned. Having decided not to utilize this particular term when discussing the vesting of Deferred Stock Awards at the time of the change in control, this court is without the authority to read such into the plan. Foster Wheeler Enviresponse, Inc., supra. Section 7 clearly indicates that in spite of any other provision of the plan, upon a change in control any unpaid Deferred Stock Awards would vest and shares were to be issued to each participant in the amount of "each such participant's Deferred Stock Award." In short, appellants were entitled to vesting of all shares originally allocated by the Compensation Committee regardless of whether they had been "earned." Therefore, appellants are correct in their assertion that the trial court erred in granting the cross motion of appellee for summary judgment. As a matter of law, appellants were entitled to judgment on their motion for summary judgment based upon the clear and unambiguous reading of the pertinent language of the plan. This court need not go to the extreme of construing language against the drafter of the plan as permitted by Graham,
supra, as it is possible to determine the meaning of all terms from the language utilized therein.
Although this court realizes that its decision may in fact work a hardship on appellees due to the fact that they will be forced to issue $18 million in shares of common stock, such a factor is not a consideration in our determination. Santana and FosterWheeler Enviresponse, Inc., supra. As to appellees' desire for this court to review additional documentation outside of the plan itself, such resort to extraneous items is unwarranted under the present circumstances. The language contained in the plan document provides a clear and unambiguous explanation of the consequences of a change in control as it concerns appellants' Deferred Stock Awards. While extrinsic documentation may be subsequently useful in determining how many shares are owed to each participant, it has no bearing on the primary issue before this court relative to whether or not the merger precipitated a vesting of stock.
Hence, appellants' assignment of error has merit. The decision of the trial court as related to the parties' opposing motions for summary judgment is reversed. It is this court's holding that summary judgment is appropriate for appellants rather than for appellees. We decline, however, the request of appellants to go further and determine the issue of damages. As appellees properly state in their brief, this court is a reviewing court not a trier of fact. As such, we cannot and will not address an issue which was not substantively determined by the trial court.
For the foregoing reasons, the decision of the trial court is reversed and this matter is remanded so the trial court may address those issues which it had previously rendered moot. Specifically, the trial court is to address appellees' counterclaims in light of this court's decision to hold that appellants, rather than appellees, were entitled to summary judgment. The trial court is then to address the issue of damage calculation.
Cox, P.J., concurs.
Donofrio, J., concurs.
APPROVED:
 ____________________________ JOSEPH J. VUKOVICH, JUDGE